United States Court of Appeals,

Fifth Circuit.

No. 94-40716.

INGALLS SHIPBUILDING, INC., et al., Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR, and Maggie Yates (Widow of Jefferson Yates),
Respondents.

Oct. 3, 1995.

Petition for Review of a Final Order of the Benefits Review Board.

Before WISDOM, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Ingalls Shipbuilding (Ingalls) appeals the order of the
Benefits Review Board (BRB) awarding Maggie Yates death benefits
under section 9 of the Longshore and Harbor Workers Compensation
Act (the "Act"), 33 U.S.C. § 909. We affirm.

I.

Jefferson Yates worked periodically as a shipfitter for
Ingalls in Pascagoula, Mississippi, from 1953 until 1967, during
which time he was exposed to asbestos. He worked in unrelated
non-maritime employment from 1967 to 1974, when he voluntarily
retired at age 67. In March 1981, he was evaluated for
asbestos-related diseases and was later diagnosed as suffering from
asbestosis, chronic bronchitis, and possible malignancy of the
lungs. In April 1981, Mr. Yates filed a claim for disability
benefits under section 8 of the Act. 33 U.S.C. § 908. In May
1981, he filed a third-party lawsuit in a Mississippi federal

1

district court, seeking damages from twenty-three manufacturers and sellers of asbestos products to which he was exposed while employed at Ingalls.

In June 1982, Ingalls admitted the compensability of Jefferson Yates's claim for disability benefits under the Act and tendered benefits. In May 1983, Ingalls and Jefferson Yates executed a settlement agreement pursuant to 33 U.S.C. § 908(i) under which Ingalls agreed to pay Mr. Yates a lump sum payment of $15,000, give him open medical benefits, and pay his attorney's fees. Ingalls made payment consistent with a May 10, 1983 order of the deputy commissioner. Between May 1981 and January 1984, Jefferson Yates consummated settlement agreements with eight defendants in the federal court suit (the pre-death settlements). Ingalls was not a party to the pre-death settlements, and Jefferson Yates did not obtain its approval before he made these settlements. Although Maggie Yates was not named a party plaintiff in the federal court suit, she signed releases in each of the pre-death settlements. Although some of the earlier settlements limited Maggie Yates's release to loss of consortium, other settlements foreclosed her from bringing any future tort claim for her husband's wrongful death.

On January 28, 1986, Jefferson Yates died from prostate cancer. The parties stipulated that his asbestosis contributed to his death. In addition to his wife, Jefferson Yates was survived by six non-dependent children. In April 1986, Maggie Yates filed a claim for death benefits under section 9 of the Act against

Ingalls and its carrier.[1]  Ingalls promptly controverted Mrs. Yates's claim.

Maggie Yates and her six non-dependent children continued Jefferson Yates's federal court suit, which was converted from a personal injury action to a wrongful death action.  Thereafter, Maggie Yates and her six children entered into settlements with Raymark, et al. on June 9, 1987, for $2,821;  with Wellington, et al. on April 5, 1989, for $60,000;  and with Johns-Manville, et al. on March 3, 1989, for $43,000 (the post-death settlements).  In accordance with section 33(g)(1), Mrs. Yates obtained Ingalls's written approval for the three post-death settlements.

Ingalls defended Ms. Yates' claim for death benefits under the Act on two fronts.  It argued that Mrs. Yates' pre-death settlement with the asbestos defendants was without its approval and her claim for post-death benefits was therefore barred by § 33(g)(1) of the Act as interpreted by the Supreme Court in *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

Ingalls also argued that once it took credit for all the net proceeds of the post-death settlements against its potential liability to Maggie Yates for death benefits under the Act, it was mathematically impossible that it would be required to pay death benefits to Mrs. Yates.

In an April 1992 decision and order, the Administrative Law

---

[1]None of the six children filed claims for death benefits under the Act.

Judge (ALJ) held that, at the time of the pre-death settlements, Maggie Yates was not a person "entitled to compensation" under section 33(g)(1) and was therefore exempt from that subsection's written approval requirement. Thus, the ALJ concluded that Maggie Yates's claim for death benefits under the Act was not barred by section 33(g)(1).

Based on the Mississippi wrongful death statute and Maggie Yates's own testimony, the ALJ determined that the post-death settlements were apportioned between Maggie Yates and the six children, so that Maggie Yates only received one-seventh of the net amount. The ALJ concluded that Ingalls was only entitled to a credit for one-seventh of the post-death settlement under the Act. However, the ALJ held that, based on the terms of the post-death settlement agreements, Ingalls was contractually entitled to receive credit under section 33(f) for the entire net amount of the post-death settlements to offset its statutory liability for death benefits. Accordingly, the ALJ awarded Maggie Yates death benefits under section 9 of the Act and held that Ingalls was entitled to a credit under section 33(f) for the entire net amount of the post-death settlements.

Maggie Yates appealed the ALJ's decision to the BRB, and Ingalls cross-appealed. The Director of the Office of Workers' Compensation Programs (Director) responded to the appeals and supported Maggie Yates's interpretations of both section 33(g)(1) and 33(f). In a June 1994 decision, the BRB affirmed the ALJ's holding that Maggie Yates's claim for death benefits was not barred

4

by section 33(g)(1) because she was not "a person entitled to compensation" at the time of the pre-death settlements. The BRB also affirmed the ALJ's order declining to give a credit as a matter of law for settlement sums received by the Yates non-dependent children against death benefits Ingalls owed under the Act. A majority of the BRB held that no contractual basis existed for allowing the offset of the entire net amount received in the post-death settlements and reversed the ALJ on this point. One member of the three judge panel dissented, arguing that, under the terms of the post-death settlements, Maggie Yates waived her right to apportionment.

Ingalls filed a timely petition for review with this Court. The Director appeared as a respondent and filed a brief supporting Maggie Yates's interpretations of sections 33(g)(1) and 33(f). We consider below the issues presented in this appeal.

## II.

### A.

Ingalls argues first that § 33(g)(1) of the Act bars Mrs. Yates' claim for death benefits because she entered into third party settlements without Ingalls' approval before Mr. Yates' death.[2] This court's review of BRB decisions is limited to

_____

[2]Ingalls moved to strike the brief of the Director and disallow any further participation, asserting that the Director lacked standing. In *Ingalls Shipbuilding Div., Litton Systems, Inc. v. White,* 681 F.2d 275, 281-84 (5th Cir.1982), *overruled on other grounds, Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 406-07 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984), this Court held that the Director has standing to participate as a respondent in the appeal of a BRB decision. In so holding, the court in *White*

5

considering errors of law and ensuring that the BRB adhered to its statutory standard of review, namely, whether the ALJ's factual findings are supported by substantial evidence. *Tanner v. Ingalls Shipbuilding,* 2 F.3d 143, 144 (5th Cir.1993).

Section 33(g)(1) provides,

"If the person entitled to compensation (or the person's representative) enters into a settlement with a third person [other than an employer or person in his employ] for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or by the person's representative.)"  33 U.S.C. § 933(g)(1).

Section 33(f) governs third-party recovery by persons entitled to compensation.  If a person entitled to compensation enters into an unapproved third-party settlement for an amount less than he is entitled to under the Act, all rights to compensation under the Act are terminated pursuant to section 33(g)(1).  On the other hand, if the person entitled to compensation enters a third-party settlement

---

rejected the line of cases relied on by Ingalls in this appeal, namely, the Fourth Circuit's rule that the Director must show a stake in the outcome of the controversy in order to respond to a petition for review under 33 U.S.C. § 921(c).  *White,* 681 F.2d at 281.  In *Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding and Dry Dock Co.,* --- U.S. ----, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995), the Supreme Court held that the Director had no standing to petition the court of appeals seeking reversal of a BRB decision.  *Id.* at ----, 115 S.Ct. at 1288.  The Court in *Newport News Shipbuilding* differentiated an agency's entitlement to party-respondent status from its standing to appeal and commented that the decision "intimates no view on the party-respondent question."  *Id.* at ---- n. 2, 115 S.Ct. at 1284 n. 2.  Thus, *White* remains binding precedent in this Circuit and forecloses Ingalls's argument that the Director has no standing to respond in this case.

6

for an amount greater than his statutory entitlement, then the written approval requirement of section 33(g)(1) does not apply, and the employer would be entitled to a 100% set-off under section 33(f).

Mrs. Yates concedes that the pre-death settlements were not approved in writing by Ingalls but argues that when these settlements were made, Mr. Yates was the only "person entitled to compensation" and thus she was not a "person entitled to compensation." She argues that because she had no right to compensation she was not required to obtain Ingalls's written approval for the pre-death settlements. On the other hand, Ingalls argues that Maggie Yates, as a potential widow, qualifies as "a person entitled to compensation" and that her failure to obtain written approval of the pre-death settlements in accordance with section 33(g) bars her claim for death benefits. Both the ALJ and the BRB agreed with Maggie Yates's interpretation of the phrase "a person entitled to compensation." The parties focus their arguments on *Estate of Cowart,* 505 U.S. 469, 112 S.Ct. 2589, a recent Supreme Court decision interpreting this phrase in section 33(g)(1).

In *Cowart,* the employee suffered a work-related hand injury, and his employer paid temporary total disability benefits for ten months but refused to pay permanent partial disability. During the period when he was not receiving any benefits, Cowart settled a third-party action without obtaining the written approval of his employer. Cowart argued that he was not "a person entitled to

7

compensation" under section 33(g)(1) at the time of the settlement because his employer was not voluntarily paying benefits and a formal award of benefits had not been issued.  Because he was not "a person entitled to compensation," Cowart contended that he was not required to obtain his employer's approval of the settlement pursuant to § 33(g)(1).

Rejecting Cowart's argument, the Supreme Court held that he became "a person entitled to compensation" at the time of the work-related injury and that it was immaterial whether the employee was receiving benefits at the time of the third-party settlement. *Id.* at 476-77, 112 S.Ct. at 2594-95.  The Court stated, "Cowart suffered an injury which by the terms of the LHWCA gave him a right to compensation from his employer.  *He became a person entitled to compensation at the moment his right to recovery vested, not when his employer admitted liability, an event yet to happen.*"  *Id.* at 477, 112 S.Ct. at 2595 (emphasis added).

Both Maggie Yates and the Director argue that, under *Cowart,* Maggie Yates was not "a person entitled to compensation" at the time of the pre-death settlements because her right to recover death benefits did not vest until her husband's death.  *See Travelers Ins. Co. v. Marshall,* 634 F.2d 843, 846 (5th Cir.1981) (stating that "a cause of action for death benefits certainly does not arise until death").

In response, Ingalls asserts that this panel should follow the Ninth Circuit's interpretation of "a person entitled to compensation" in a case very similar to the instant case.  In

8

*Cretan v. Bethlehem Steel Corp.,* 1 F.3d 843 (9th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994), an employee exposed to asbestos during his employment filed a claim for disability benefits under the Act, and the employer disputed liability. The employee also filed a product liability suit against numerous asbestos manufacturers and entered into settlement agreements with several of those manufacturers without obtaining the written approval of his employer. Although his wife and daughter were not named as parties in the third-party suit, both settled their wrongful death claims against the manufacturers as part of the settlement agreements. In addition, his wife settled her loss of consortium claim in the same series of agreements. After the employee died, an ALJ awarded disability benefits to his wife and death benefits to his wife and daughter. The Ninth Circuit held that the wife and daughter were "persons entitled to compensation" and therefore could not recover death benefits under the Act because they failed to obtain the written approval of the employer for the pre-death settlements as required by section 33(g). *Id.* at 848.

The *Cretan* court considered the Supreme Court's language in *Cowart* that the employee "became a person entitled to compensation at the moment his right to recovery vested," and concluded that it was dicta that was not binding on the court. The precise issue presented in *Cowart* was the definition of "a person entitled to compensation." The Court's determination that the employee qualified under this statutory test when his right to recovery

vested is the core of the Supreme Court's holding. We therefore disagree with the *Cretan* court's conclusion that this critical part of the Supreme Court's opinion in *Cowart* is dicta.

Thus, applying *Cowart* 's definition we conclude that section 33(g)(1) does not bar Maggie Yates's death benefits claim because she was not "a person entitled to compensation" at the time of the pre-death settlements. At the time of the pre-death settlements, Maggie Yates's claim for death benefits had not vested. Three contingencies come to mind under which Maggie Yates's right to death benefits under the Act would have never accrued. She could have predeceased or divorced her husband, or Jefferson Yates could have died from causes unrelated to his employment. Under any of these scenarios, Maggie Yates's right to death benefits under the Act would never have accrued. Because Mrs. Yates' right to death benefits had not vested when the pre-death settlements were made, her failure to obtain Ingalls's written approval of the pre-death settlements is irrelevant.

B.

Ingalls argues next that the BRB erred in concluding that Ingalls was not entitled to offset from death benefits due Ms. Yates the entire amount of the *post*-death settlements. The ALJ determined that Maggie Yates only received one-seventh of the net amount of the three post-death settlements. He held, however, that, as a matter of contract law, the settlement agreements Ms. Yates executed permitted Ingalls to offset the entire net amount of the post-death settlements. The BRB reversed and held that Ingalls

10

was only entitled to set-off the net amount received by Maggie Yates.

We first consider the propriety of the BRB's offset under § 33(f) of the Act, without regard to the provisions of the settlement agreement. Section 33(f) provides:

> "If the person entitled to compensation institutes proceedings ... the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the *net amount recovered against such third party*. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred *by such person* in respect to such proceedings (including reasonable attorneys' fees). 33 U.S.C. § 933(f) (emphasis added).

Ingalls first argues that, as a matter of law, it is entitled to a credit under section 33(f) for the net amount of all the post-death settlements. Ingalls argues that the appropriate set-off is the "amount recovered against the third party." Respondents counter that the proper offset is the net amount recovered by "such person" entitled to compensation. Several courts have addressed this precise issue. In *Force v. Director,* an employee's widow and her two children settled their potential wrongful death action with third-parties. 938 F.2d 981 (9th Cir.1991). In the widow's later claim for death benefits under the Act, the employer argued that it was entitled to a credit for the net amount the widow and her two children obtained in the settlement agreements. Like the Yates children, the Force children filed no claims for death benefits under the Act. Rejecting the employer's argument, the Ninth Circuit stated,

> "The offset provision [of section 33(f) ] applies to the third party recovery obtained by "the person entitled to

11

compensation" under the Act. *An employer is entitled to offset its liability to a particular claimant only the third party damages received by the claimant for the covered occupational injury or death* ... The Force children did not file claims for LHWCA benefits and are not entitled to them; section 933(f) simply does not apply to the children or their third party recovery." *Id.* at 985 (emphasis added).[3]

The Fourth Circuit has also adopted this interpretation of section 33(f) in determining apportionment among parties. *See I.T.O. Corp. of Baltimore v. Sellman,* 967 F.2d 971 (4th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993) ("Employer's offset rights [under section 33(g) ] are limited to the portion intended for the claimant since the claimant is the "person entitled to compensation.' "). *See also Brown v. Forest Oil Corp.,* 29 F.3d 966, 972 (5th Cir.1994) (in the context of an employer's lien, "[e]mployer's offset rights are limited to the portion of the recovery intended for the employee").

Based on the plain language of § 33(f) and the above authorities, we conclude that Ingalls's argument that it is entitled as a matter of law to a credit for the net amount received by Mrs. Yates and her six children from the post-death settlements must be rejected. Ingalls is only entitled to a credit under section 33(f) for the net amount received by Mrs. Yates.

Relying on *St. John Stevedoring Co. v. Wilfred,* 818 F.2d 397

---

[3]The settlement at issue in *Force* was executed before the employee died. Because the court in *Force* also held that a potential widow was a "person entitled to compensation" under section 33(f), it applied section 33(f) to the pre-death settlement. Although Ingalls argues that we should adopt *Force* 's definition of "a person entitled to compensation" for section 33(g), it does not argue that it is entitled to a set-off under section 33(f) for the pre-death settlements.

12

(5th Cir.1987), Ingalls argues next that the provisions of the post-death settlement agreements provide them with an independent basis to obtain credit for the net amount of the settlements received by Maggie Yates and her six children. The respondents counter that the terms of the settlement agreement are ambiguous and cannot be reasonably interpreted as a consent by Maggie Yates to grant Ingalls a credit for the net amount of all third party recoveries. In addition, the respondents assert that the BRB properly held that Ingalls had no right to enforce the terms of the settlement agreements.

Because we are persuaded that the respondents' first argument is meritorious, we do not reach their remaining contentions. For the reasons explained below, we conclude that the language in these contracts does not clearly and unambiguously require Mrs. Yates to give Ingalls a credit for any sums that exceed the net amount she received from the settlements.

Three separate settlements were reached in this case and three separate releases were executed. The settlement with Raymark Industries et al. was signed on June 9, 1987. Mrs. Yates and her six children are named in the body of the release and referred to collectively as "Releasors." The critical paragraph provides in part that if any claim for worker's compensation benefits ... [1] "shall hereafter be filed and be successful, and the amounts ordered to be paid are found to be a lien against the consideration paid herein, then any employer or its insurance carrier paying or ordered to pay such compensation benefits to any Releasor shall

13

first be given credit for the consideration paid to Releasors under this agreement, less reasonable costs of collection, and [2] shall make no payment of any compensation benefits to any Releasor until the consideration paid to Releasors under this agreement is exhausted." The initial clause quoted above reflects an intent to give the employer a credit to the extent any compensation payments to the Releasors constitute "a lien against the consideration paid herein." Obviously the only portion of the third party settlement which could be subject to a lien are for sums paid to a person "entitled to compensation." No compensation lien can be imposed on settlement sums paid by a third party to an employee not entitled to compensation. *See* 33 U.S.C. § 917. Thus, the language in the release which purports to give the employer a set-off against settlement sums subject to a compensation lien reflects an intent to limit the set-off to the portion of the settlement paid to a party entitled to compensation.

This supports the director and Mrs. Yates' argument that the language of the instrument does not reflect an intent to grant a set-off for the total amount of the settlement. The second clause in the above quoted provision ("and shall make no payment of any compensation benefits to any Releasor until the consideration paid to Releasors under this agreement is exhausted") could, if read in isolation, reflect an intent to grant the employer a credit for the total consideration paid to all Releasors under the settlement agreement. But the second clause does not clearly indicate an intent to grant a credit for sums not covered by a compensation

14

lien.  The second clause can reasonably be read to grant a credit to the employer against sums paid to all "Releasors" for all settlement sums subject to a compensation lien.[4]  The settlement instrument does not evidence an intent to grant Ingalls a set-off in derogation of § 33(f) of the Act with sufficient clarity to permit enforcement.

Language almost identical to that quoted above in the Raymark release is included in the other two instruments.  In the Wellington settlement, the release provides that if any claim for workmen's compensation shall be filed and be successful ... "and the amounts ordered to be paid are found to be a lien against the consideration paid herein, then any employer or its insurance carrier paying or ordered to pay such compensation benefits to either of the undersigned shall first be given credit for the consideration paid to the undersigned under this agreement...."  The Manville settlement contains an almost identical provision.[5]

---

[4]In the Raymark settlement, the third party tort defendants obtained an individual "acknowledgement" from Maggie Yates giving Litton systems "credit for the amount of money paid to *me* by the above named defendant."  It stated further that "Litton Systems will owe *me* no workmen's compensation benefits or medical benefits under the Longshore & Harbor Workers' Compensation Act until the amount received *by me* from the above mentioned defendant has been exhausted based on the weekly benefits due me from Litton Systems, Inc...."  This instrument, prepared for Mrs. Yates' signature, makes no reference to Mrs. Yates' children; and Mrs. Yates' children signed no separate acknowledgement similar to the one signed by Mrs. Yates.  (emphasis added)  See page 17 of RX 21.

[5]Neither the Wellington nor the Manville settlement papers include a separate document similar to the "Acknowledgement" signed by Mrs. Yates in the Raymark settlement and discussed in note 4.

15

For the reasons stated above, we conclude that the language in these three instruments do not reflect with sufficient clarity an intent to grant Ingalls a credit against any larger portion of the settlement sum than would be subject to a compensation lien. A compensation lien would only be imposed on the settlement sums received by Mrs. Yates since she was the only settling party who was entitled to compensation.[6]

For the reasons stated above, we affirm the order of the BRB.

AFFIRMED.

---

[6]Although Mrs. Yates was not entitled to compensation at the time of the pre-death settlements, her right to compensation under the Act accrued upon Mr. Yates' death. *See* 33 U.S.C. § 909.