United States Court of Appeals,

Fifth Circuit.

No. 96-60478.

CERES GULF, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR;  Luther Fagan, Respondents.

April 10, 1997.

Petition for Review of an Order of the Benefits Review Board.

Before GARWOOD, WIENER and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this Longshore and Harbor Workers' Compensation Act case ("LHWCA"), 33 U.S.C. § 901 *et seq.,* we review an order by the Benefits Review Board (the "Board") affirming a decision of an Administrative Law Judge ("ALJ") in favor of an injured longshoreman.  Because the timeliness of the longshoreman's claim is not supported by substantial evidence, we reverse the Board's order.

BACKGROUND

Luther Fagan was injured while employed as a longshoreman by Ceres Gulf. On June 10, 1988, Fagan was loading cotton onto a vessel when a hook knocked him in the head, cracking his hard hat.  After the hit, Fagan felt dizzy and sat out the rest of his shift.  The next day, Fagan worked four hours, and then, feeling dizzy, again sat out the day.  On June 13, Fagan "blacked out."  When he awoke, he was sweating and unable to see.  He went to the hospital but was discharged that evening.

The next day, Fagan went to see Dr. Charles Miller, a general practitioner who had been treating him for his pre-existing diabetes.  Fagan told Dr. Miller that he thought his symptoms, which included nausea, double vision, and a headache, were caused by hypoglycemia related to his diabetes.  Dr. Miller referred Fagan to Dr. Donald Lupin, an internist.

Dr. Lupin admitted Fagan to the hospital on June 14.  A CAT scan suggested a cerebral hemorrhage, which Dr. Lupin interpreted as related to the hit on his head.  Dr. Robert Applebaum,

a neurosurgeon, examined Fagan in the hospital on June 15. Dr. Applebaum did not think there was any relationship between Fagan's symptoms and the accident at work. Instead, he thought Fagan's symptoms were caused by cerebral vascular disease brought on by his diabetes. On July 4, 1988, Fagan was discharged from the hospital.

Fagan's neurological symptoms persisted after discharge, and he was unable to continue working. Fagan filed a claim for benefits under the LHWCA on June 27, 1991, alleging that his neurological problems resulted from the work-related injury to his head.[1] The ALJ found in Fagan's favor, holding that Fagan was disabled and that his disability was causally related to his employment. The ALJ also found that Fagan's claim was timely filed. Ceres Gulf appealed, and the Board affirmed. Ceres Gulf now petitions for review of the Board's order.

DISCUSSION

As a threshold matter, we must consider whether Fagan timely filed his claim. A worker must file an LHWCA claim within one year after the injury. 33 U.S.C. § 913(a). However, "[t]he time for filing a claim shall not begin to run until the employee ... is aware, or by reasonable diligence should have been aware, of the relationship between the injury or death and the employment." *Id.* In order to determine if prescription has run, "we look to the employee's appreciation of the relation between his injury and his employment. For prescription to run against him, he must know (or should know) the true nature of his condition, i.e., that it interferes with his employment by impairing his capacity to work, and its causal connection with his employment." *Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141 (5th Cir.1984).

Because Fagan was injured in June 1988, absent tolling, he had until June 1989 to file his claim. In the proceedings below, Fagan's position regarding timeliness was two-fold. First, he argued that he did file a claim within one year of his injury. In the alternative, he contended that he did not become aware of the connection between his injury and his employment for over two years. Therefore, the prescription period did not begin to run until July 1990, thus making his June 1991

---

[1]All parties agree that Fagan filed a claim for benefits under the LHWCA on June 27, 1991. The timeliness of that claim will be discussed below.

filing timely.

Fagan argued to the ALJ that he filed an LHWCA claim on March 21, 1989. While the Office of Worker's Compensation Programs ("OWCP") of the Department of Labor had no record of that filing, and Fagan could provide no acknowledgment of its filing, Fagan did put on some evidence that he filed the claim. After considering the evidence, the ALJ found that Fagan had not carried his burden of proving he filed an LHWCA claim in March 1989.

Fagan provided the ALJ a copy of a form LS-203 (Employee's Claim for Compensation) signed by Fagan and dated March 21, 1988, a date almost three months prior to Fagan's injury. Fagan contended that the form was misdated, and was actually completed on March 21, 1989. In support of his claim of misdating, he provided his own affidavit, and that of his wife and the attorney who helped him complete the form.

Fagan's attorney's former secretary testified before the ALJ. She stated that in late March 1989 she accompanied Fagan and his wife to the Hale Boggs Federal Building at 500 Camp Street in New Orleans, Louisiana, to file the claim form with the OWCP. Fagan's wife testified that she accompanied Fagan's attorney's secretary to the OWCP office.

In its opinion, the ALJ noted that the OWCP was not located in the Hale Boggs Building in March 1989; it had moved to 701 Loyola Avenue on May 31, 1988. The ALJ also noted that the same attorney was handling Fagan's Social Security claim, and that neither the secretary nor Fagan's wife would be able to tell the difference between filing an OWCP claim and a Social Security claim. All that the ALJ was able to determine was that "some time in March, 1989, someone from [Fagan's lawyer's office] assisted the Fagans in taking some type of documents *somewhere.*" From this, the ALJ found that Fagan failed to carry his burden of proving that he filed an OWCP claim by June 1989. Fagan does not appeal this factfinding.

Fagan argued in the alternative that he did not become aware that his injury was work-related until he received Dr. Richard Paddison's report on July 20, 1990. This report, Fagan claimed, was the first time a doctor told him that his neurological problems were caused by the blow to the head, rather than his diabetes. Before that date, Fagan's physicians' diagnoses were inconclusive, or, in the

case of Dr. Applebaum, stated that his problems were caused solely by diabetes. Fagan therefore contended that he did not become aware of the relationship between his injury and his employment until July 20, 1990. Accordingly, the one-year prescriptive period did not begin to run until that date. Because his LHWCA claim was filed on June 27, 1991, less than a year later, it was timely filed. The ALJ agreed with Fagan that "[t]he first opinion reporting more than a speculative link between the head blow and [Fagan's] condition was Dr. Paddison's report stating his belief that [Fagan] suffered "accelerating head trauma.' " Therefore, the ALJ found, Fagan's claim was not time-barred.

The Board held that the ALJ reasonably found the claim timely, and affirmed the ALJ's finding. Our review of Board orders is limited to considering errors of law and ensuring that the Board adhered to its statutory standard of review, namely, whether the ALJ's factfindings are supported by substantial evidence. *See Ingalls Shipbuilding v. Director, Office of Workers' Compensation Programs,* 65 F.3d 460, 463 (5th Cir.1995), *aff'd,* --- U.S. ----, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997).

After reviewing the record, we conclude that the ALJ's determination that Fagan's claim was timely filed is not supported by substantial evidence. Fagan presented evidence that he filled out an OWCP claim form LS-203 on March 21, 1989.[2] While the ALJ found that this form was never filed with the OWCP, the evidence is undisputed that Fagan completed the form on that date. In fact, Fagan presented three affidavits (one from himself, one from his wife and one from his lawyer), all stating under penalty of perjury that Fagan gave the information contained on the March 21, 1988 LS-203.

On the LS-203, when asked to describe the accident which resulted in the injury, Fagan stated that:

> Claimant and another longshoremen [*sic* ] were in the hatch of the ship loading cotton. The cotton was lowered into the hatch by winch. The bales were hooked to the winch. 2 hooks were not hooked to the bales of cotton and one of the hooks struck claimant in the head, striking his hard hat.

In the next question, Fagan was asked to describe the nature of his injury. He replied that he suffered

---

[2]As discussed above, the form was incorrectly dated March 21, 1988. Nonetheless, the evidence establishes that it was actually completed March 21, 1989.

a "[h]ead injury causing nausea, vomiting, headache, dizziness, blurred and double vision, and cerebellar infarction and loss of hearing." Fagan signed the LS-203 under penalty of perjury.

The ALJ made much of the facts that Fagan has a limited education, completing only the second grade, that he is illiterate, and that he has suffered severe head trauma.[3] The ALJ went so far as to state that, "even if any medical personnel had suspicions that the stroke symptoms might be related to the head blow, there is no evidence that they ever related this to [Fagan], who was and probably is still under the impression that he suffered a "stroke.' "

While we do not doubt the ALJ's comments regarding Fagan's limited education and abilities, the evidence is clear that, by March 21, 1989, Fagan was aware of "the true nature of his condition, i.e., that it interferes with his employment by impairing his capacity to work, and its causal connection with his employment." *See Marathon Oil,* 733 F.2d at 1141. Fagan made this clear in the LS-203 when he stated that the hook hitting his head caused his "head injury" and a "cerebellar infarction." In his affidavit, he also stated that "he gave the information to prepare [the] LS-203" in question. In the hearing before the ALJ, Fagan did not deny signing the LS-203, nor did he claim that he was unaware of its contents. Fagan offered absolutely no evidence to rebut or explain away the LS-203 which clearly showed his knowledge, as of March 21, 1989, of the relationship between the accident and his injury.

Whether a reasonable man of Fagan's abilities would know of the causal link between the accident and the injury is not the issue. Fagan presented evidence that he had actual knowledge of the relationship between the two. Because the evidence shows that Fagan actually did know, we need not inquire into whether he should have known.

## CONCLUSION

Fagan had actual knowledge of the relationship between the accident and his injury as of March 21, 1989. His prescriptive period, therefore, began to run, at the latest, on that date. Because an LHWCA claim was not filed until June 27, 1991, more than a year after March 21, 1989, his LHWCA claim was not timely filed. Accordingly, the ALJ's finding that Fagan's claim was timely

---

[3]While Fagan is unable to read or write, the evidence shows that he is able to sign his name.

filed is not supported by substantial evidence, and the Board erred in affirming the ALJ's decision.

Therefore, the order of the Board is REVERSED.