Denied by published opinion. Judge WILLIAMS announced the judgment of the court and wrote an opinion, in which Judge MURNAGHAN joined as to Part IV. Judge MURNAGHAN wrote a concurring opinion.
OPINION
WILLIAMS, Circuit Judge:
As a quorum, we must decide whether a container-repair facility that neither is contiguous with navigable waters nor touches such waters, and that is not within the boundary of a shipping terminal, is a maritime situs under the Longshore and Harbor Workers’ Compensation Act (the LHWCA), 33 U.S.C.A. §§ 901-950 (West 1986). Petitioners Earl J. Parker, Jr. and Glenn C. Redmon were injured in separate accidents dining the course of their employment as, respectively, an inspector and a container mechanic for respondent Farrell Lines, Inc.[1] Petitioners challenge a decision of the Benefits Review Board (the Board) affirming the decision of an administrative law judge (AL J) denying their claims for compensation on the basis that their injuries did not occur on a maritime situs. See 33 U.S.C.A. § 903(a) (West 1986). Because we conclude that the off-terminal facility where Petitioners were injured is not a maritime situs, as another panel has defined that term in Sidwell v. Express Container Services, Inc., 71 F.3d 1134 (4th Cir.1995), we deny the petition for review. In addition, we take this opportunity to clarify the role of the Director of the Office of Workers’ Compensation Programs (the Director) in review proceedings under the LHWCA.
I.
Farrell owns ships that transport containerized cargo[2] to and from various ports, including the Norfolk International Terminal (NIT) in Norfolk, Virginia. Farrell also owns containers into which cargo is packed before shipping. Farrell periodically inspects its containers and makes necessary repairs as a part of its shipping operations.
Farrell leases a small inspection and repair facility at NIT, but performs most of its container-repair work at a larger facility lo *932 cated at 901 West 24th Street in Norfolk (the 24th Street site), approximately five miles from NIT. Although Farrell originally conducted all of its container-repair operations at NIT, expansion of the terminal compelled Farrell to transfer most of these operations off-terminal. Farrell employees engage in the same activities at the 24th Street site as at NIT. One Farrell employee is permanently assigned to the NIT facility; others are transferred to and from the NIT facility on an as-needed basis. In addition to servicing containers from NIT, the 24th Street site receives containers, chassis, and refrigeration units that arrive overland by truck and by rail.
The 24th Street site is located in an area of Norfolk zoned for light industrial uses and is surrounded by' a residential area to the north, a railway to the south, and various small businesses in the immediate vicinity. Farrell selected the 24th Street site for a variety of reasons including proximity to NIT, the ease with which containers and employees could be moved between NIT and the 24th Street site, suitability of the site for container repair, and favorable lease terms. Farrell considered and rejected several other sites because of their greater distance from NIT and their unsuitability to Farrell’s purposes.
Petitioners were injured in separate instances at the 24th Street facility[3] and received compensation under the Virginia Workers’ Compensation Act. Each petitioner filed a separate claim under the LHWCA, seeking the greater benefits it affords. The administrative law judge (ALJ) consolidated the actions and denied benefits, basing the denial on his determination that the 24th Street site was not a maritime situs covered by the LHWCA. The Board affirmed, and Petitioners now seek review of the ALJ’s decision. Whether a particular site is a maritime situs under the LHWCA is a mixed question of law and fact subject to plenary review. See Humphries v. Director, OWCP, 834 F.2d 372, 374 (4th Cir.1987), cert. denied, 485 U.S. 1028, 108 S.Ct. 1585, 99 L.Ed.2d 900 (1988).
II.
In order to qualify for benefits under the LHWCA, a claimant must establish that, at the time of the injury, he was engaged in maritime employment (the “status” test), see 33 U.S.C.A. §§ 902(3), 903(a) (West 1986), and that he was injured “upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or budding a vessel),” 33 U.S.C.A. § 903(a) (the “situs” test). The status and situs tests were created as part of the 1972 amendments to the LHWCA, the purpose of which was to expand coverage to include workers who travelled from ship to shore as they worked, thereby preventing such workers from walking in and out of coverage during the course of the day. See Humphries, 834 F.2d at 373.
Petitioners contend that the ALJ erred in concluding that the 24th Street site is not a maritime situs under the LHWCA. According to Petitioners, the 24th Street site properly is considered an “other adjoining area” of NIT, at least in part because Farrell was forced by expansion of NIT to move its container-repair operations to the 24th Street site, the closest available site to the terminal. Petitioners claim that extending the reach of the LHWCA to the 24th Street site, five miles from NIT, is necessary to avoid the sort of sporadic coverage that the 1972 amendments to the LHWCA were designed to eliminate.
Our analysis of the question of whether the 24 Street site is a maritime situs under the LHWCA is controlled by the recent decision of this court in Sidwell v. Express Container Services, Inc., 71 F.3d 1134 (4th Cir.1995). In Sidwell, we explicitly rejected tests based on interpretations of the phrase “other adjoining area” offered by the Third, Fifth, and Ninth Circuits on the ground that each test “openly disavow[ed] the statutory text.” Id., *933 71 F.3d at 1138. Instead, based on the ordinary meaning of the term “adjoin,” we held that “an area is ‘adjoining’ navigable waters only if it ‘adjoins’ navigable waters, that is, if it is ‘contiguous with’ or otherwise ‘touches’ such waters.” Id., 71 F.3d at 1138-39. Additionally, we noted that the situs test may be satisfied if the injury occurs within the boundaries of a marine terminal that is contiguous with navigable waters. Id, 71 F.3d at 1140 n.11.
Applying the principles of Sidwell to the facts before us, we conclude that Petitioners have not established that they were injured on a maritime situs. Under Sidwell’s cogent explanation of the statutory language, the dispositive question of whether the 24th Street site is a maritime situs involves a straightforward geographical determination: either the 24th Street site adjoins navigable waters and is a maritime situs, or it does not and is not. Because the 24th Street site neither is contiguous with navigable waters, nor touches such waters, nor is located within the boundaries of NIT, it cannot be a maritime situs under the LHWCA. That Farrell was compelled to relocate to the 24th Street site by expansion of NIT does not affect our decision, nor does it matter that some Farrell employees occasionally travel between NIT and the 24th Street site. As we explained in Sidwell, the relevant inquiry is whether the situs upon which the injury occurred is a maritime situs:
[Claimant] argues that whether terminal expansion has forced relocation from a site directly adjoining navigable waters to one that does not adjoin such waters (but is the closest feasible), is relevant to whether a particular site adjoins navigable waters. We disagree. The exigency of even a forced relocation cannot transform a site distant from navigable waters into one that somehow “adjoins” those waters. The site either adjoins navigable waters or it does not, and, as the Supreme Court has instructed, that is a geographical inquiry.
The same must be said with respect to the fact that[the employer] had mobile trucks which went to the terminal to perform minor repairs on-site. That an employer sends some workers to the waterfront — or even that an employer has a separate site altogether that is “adjoining” navigable waters — is not germane to the question of whether an injury occurred at a covered situs. The statute is expressly limited to the place where the “injury occurred]”; an employer’s other activities or locations are irrelevant to the geographic inquiry of whether the injury occurred at a covered situs.
Id., 71 F.3d at 1139 n.8. Accordingly, we deny the petition for review.
III.
I cannot share Judge Murnaghan’s view that Sidwell is wrongly decided because that decision employs too narrow a construction of the term “adjoining.” In my view, Sidwell correctly rested on the plain language of the statute. See Reves v. Ernst & Young, 507 U.S. 170, 177-78, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993) (noting that plain statutory language is conclusive in the absence of a clearly expressed legislative intent to the contrary). Judge Murnaghan’s reliance on policy grounds to expand the situs test beyond that contemplated by the plain language of the statute is particularly inappropriate in light of the Supreme Court’s clear admonition that we not substitute our own policy preferences for those of Congress. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 483-84, 112 S.Ct. 2589, 2598-99, 120 L.Ed.2d 379 (1992). Moreover, the policy on which Judge Murnaghan relies — that of favoring coverage over non-coverage, post at 940 — proves too much: it is precisely the policy that Sea-Land Service, Inc. v. Director, OWCP, 540 F.2d 629, 636-38 (3d Cir.1976), wielded to eliminate the situs requirement altogether, a result directly contrary to the statute and expressly disapproved by the Supreme Court in Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 426-27, 105 S.Ct. 1421, 1428-29, 84 L.Ed.2d 406 (1985); see also Humphries, 834 F.2d at 372 (disapproving of Third Circuit’s reasoning in Sea-Land Service ). As Sidivell explains, 71 F.3d at 1140, in enacting the 1972 amendments- to the LHWCA Congress was motivated by the much more narrow policy of providing uniform coverage on both sides of the gangplank, the water and the adjoining land. *934 Finally, I cannot agree with Judge Murnaghan that we owe deference to the Director’s amorphous interpretation of the situs requirement. As Sidwell held, that interpretation — under which locations as remote as Kansas City, Kansas would be covered sitases — conflicts with the plain statutory language and hence is due no deference. See id., 71 F.3d at 1142.
IV.
We take this opportunity to address the Director’s proper role in petitions for review under the LHWCA. The LHWCA provides in pertinent part that “[a]ny person adversely affected or aggrieved by a final order of the Board may obtain review of that order in the United States court of appeals for the circuit in which the injury occurred.” 33 U.S.C.A. § 921(c) (West 1986). While the Director was a party to all petitions for review prior to the 1972 amendments to the LHWCA, Congress did not designate the Director as a party to petitions for review in the 1972 amendments. See I.T.O. Corp. v. Benefits Review Bd., 542 F.2d 903, 906 (4th Cir.1976) (en banc) (I.T.O. Corp.I), vacated and remanded on other grounds sub nom. Adkins v. I.T.O. Corp., 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977).[4] In I.T.O. Corp. I, we held that Congress’ failure to designate the Director as a party meant that “if the Director is to be a party, [s]he must be a ‘person adversely affected or aggrieved by a final order of the Board’ within the meaning of § 912(e).” Id. at 907. Based on this reasoning, we concluded that the Director is not a proper respondent in a petition for review under the LHWCA unless she can show that she is a person adversely affected or aggrieved by the decision of the Board.[5] Id. at 909.
The holding of I.T.O. Corp. I should have ended the practice of automatically naming the Director as a respondent in all petitions for review under the LHWCA The practice did not end, however, perhaps because I.T.O. Corp. I did not discuss the impact of Federal Rule of Appellate Procedure 15(a), which requires that “the agency must be named respondent” in a petition for review of an order of an administrative agency, board, commission, or officer. We agree with the District of Columbia Circuit that Rule 15(a) simply is not applicable in the context of a petition for review under the LHWCA because the Director’s presence as a party is not necessary:
Normally, a single private party is contesting the action of an agency, which agency must appear and defend on the merits to insure the proper adversarial clash requisite to a “case or controversy.” But Rule 1(b), Fed.RApp.P., says that “[t]hese rules shall not be construed to extend or limit the jurisdiction of the courts of appeals as established by law.” Here, there is sufficient adversity between[the employer and the claimant] to insure proper litigation without participation by the Board. To require the Board to appear as a party would parallel requiring the District Court to appear and defend its decision upon direct appeal.
McCord v. Benefits Review Bd., 514 F.2d 198, 200 (D.C.Cir.1975); see also Shahady v. Atlas Tile & Marble Co., 673 F.2d 479, 485 (D.C.Cir.1982) (“The reasoning of McCord— that the rationale of Rule 15(a) is inapplicable to this kind of situation — applies as much to the [Director] as it does to the Board.”). But see Ingalls Shipbldg. Div., Litton Sys., Inc. v. White, 681 F.2d 275, 283 (5th Cir.1982) (declining to follow Shahady), overruled in part on other grounds by Newpark Shipbldg. & Repair, Inc. v. Roundtree, 723 F.2d 399 (5th Cir.1984).
*935 Therefore, we reaffirm the holding of I.T.O. Corp. I that the Director shall not automatically be named as a respondent in a petition for review under the LHWCA, but must make an affirmative showing that she is adversely affected or aggrieved by the decision of the Board.[6] If the Director is not adversely affected or aggrieved by the decision of the Board, but nonetheless wishes to participate on behalf of one of the parties, she first must request and be granted permission to intervene on the side of the party whose position she supports, see I.T.O. Corp. I., 542 F.2d at 909 (“The Director unquestionably has a right to seek to intervene under Rule 24(b) Fed.R.Civ.P., and an application will ordinarily be granted.”) (footnote omitted). In accordance with this holding, we dismiss the Director as a respondent in this petition for review and grant the Director’s motion to intervene nunc pro tunc on the side of Petitioners.[7]
V.
Because the 24th Street site is not contiguous with navigable waters, we conclude that it is not a maritime situs under the LHWCA. Accordingly, we deny the petition for review.

DENIED.

. The term “containerized cargo” refers to cargo that has been loaded into mobile storage units— containers — for the purpose of transporting the cargo to its destination.

. Because the parties have stipulated that Petitioners were engaged in maritime employment at the time of their injuries, see 33 U.S.C.A. §§ 902(3), 903(a) (West 1986), discussion of the circumstances surrounding Petitioners’ injuries is unnecessary.

. On remand, the en banc court adhered to its holding that the Director is not a proper respondent in a petition for review under the LHWCA. See I.T.O. Corp. v. Benefits Review Bd.., 563 F.2d 646, 648 (4th Cir.1977) (en banc) (per curiam) (I.T.O. Corp. II).

. The Director is adversely affected or aggrieved if a decision by the Board directly hampers the Director’s ability to carry out her statutory duties. See Director, OWCP v. Newport News Shipbldg. & Dry Dock Co., 8 F.3d 175, 180-81 (4th Cir.1993), aff'd, - U.S. -, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995). The Director’s mere disagreement with the decision of the Board does not render her adversely affected or aggrieved. See I.T.O. Corp. I, 542 F.2d at 907-09.

. In addition, we note that this holding applies only to petitions for review under the LHWCA.

. We have considered the Director’s position with respect to the proper interpretation of the phrase "other adjoining area,” and reject that position for the reasons stated in Sidwell. See Sidwell, 71 F.3d at 1143.

. In reaching that conclusion, the Sidwell majority relies upon introductory comments in a Senate committee report not appearing in the corresponding House report as proof of the full Congress’s intent. See infra note 6.