INGALLS SHIPBUILDING, INC., ET AL. *v.* DIREC-
TOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, DEPARTMENT
OF LABOR, ET AL.

No. 95–1081.   Argued November 12, 1996—Decided February 18, 1997

*Richard P. Salloum* argued the cause for petitioners. With him on the briefs were *Paul B. Howell, William J. Powers, Jr.,* and *George M. Simmerman, Jr.*

*Beth S. Brinkmann* argued the cause for the federal respondent. On the brief were *Acting Solicitor General Dellinger, Deputy Solicitor General Kneedler, J. Davitt McAteer, Allen H. Feldman,* and *Edward D. Sieger.*

*Wynn E. Clark* argued the cause for respondent Yates. With him on the brief was *Ransom P. Jones III.**

JUSTICE O'CONNOR delivered the opinion of the Court.

Section 33 of the Longshore and Harbor Workers' Compensation Act (LHWCA or Act), 44 Stat. 1424, as amended, 33 U. S. C. § 933, gives the "person entitled to compensation" two avenues of recovery: Such a person may seek to recover damages from the third parties ultimately at fault for any injuries and still recover compensation under the Act from the covered worker's employer as long as the worker's employer gives its approval before the person settles with any of the third party tortfeasors. The question we decide today is whether an injured worker's spouse, who may be eligible to receive death benefits under the Act after the worker dies, is a "person entitled to compensation" when the spouse enters into a settlement agreement with a third party before the worker's death. We also consider whether the Director of the Office of Workers' Compensation Programs (OWCP) is a proper respondent in proceedings before the courts of appeals.

I

Jefferson Yates worked for Ingalls as a shipfitter at its Pascagoula shipyards in Mississippi between 1953 and 1967 and was exposed to asbestos in his workplace during this time. In March 1981, Mr. Yates was diagnosed as suffering from asbestosis, chronic bronchitis, and possible malignancy in his lungs. Less than a month later, he filed a claim for disability benefits under § 8 of the LHWCA, 33 U. S. C. § 908, asserting that his present condition resulted from his expo-

---

*Briefs of *amici curiae* urging reversal were filed for Bethlehem Steel Corp. by *Robert E. Babcock;* and for the National Association of Waterfront Employers et al. by *Charles T. Carroll, Jr., Thomas D. Wilcox,* and *Franklin W. Losey.*

*Victoria Edises* and *Anne Michelle Burr* filed a brief for the Asbestos Victims of America as *amicus curiae* urging affirmance.

sure to asbestos while employed by Ingalls. Ingalls admitted the compensability of this claim and eventually entered into a formal settlement with Mr. Yates in satisfaction of its liability under the Act.

Mr. Yates, in the meantime, filed a lawsuit in Federal District Court against the 23 manufacturers and suppliers of asbestos whose products were allegedly present at the Pascagoula shipyards during the period in which Mr. Yates contracted asbestosis. Before his death in 1986, Mr. Yates entered into settlement agreements with 8 of the 23 defendants (predeath settlements). Each defendant required Maggie Yates, Mr. Yates' wife, to join in the settlement and to release her present right to sue for loss of consortium, even though she was not a party to the litigation. Six of the eight defendants also required Mrs. Yates to release any cause of action for wrongful death that might accrue to her after her husband died. None of the third party settlements was approved by Ingalls.

After her husband's death, which the parties have stipulated resulted from asbestos exposure that occurred "in the course and scope of [his] employment," App. to Pet. for Cert. A–59, Mrs. Yates filed a claim for death benefits as Mr. Yates' widow under § 9 of the Act, 33 U. S. C. § 909. Ingalls contested the claim on the ground that Mrs. Yates had been a "person entitled to compensation" under the Act when she entered into the predeath settlements. Ingalls argued that by failing to obtain its approval of those settlements she forfeited, under § 33(g)(1), her eligibility for death benefits. In response, Mrs. Yates argued that she was not a "person entitled to compensation" when she entered into those settlement agreements because her husband was still alive at that time. The deputy commissioner referred the matter to an Administrative Law Judge (ALJ).

The ALJ ruled in favor of Mrs. Yates. *Yates* v. *Ingalls Shipbuilding, Inc.*, 26 BRBS 174 (1992). The ALJ recognized that Mrs. Yates was no more than a *"potential* widow"

when she entered into the settlement agreements. App. to Pet. for Cert. A–67. Reasoning that the prerequisites for the recovery of death benefits could not be established prior to the worker's death, he found that the "spouse of an injured employee has no cause of action [under the Act] until the injured employee dies from his work-related injury." *Id.*, at A–68. Because Mrs. Yates had no cause of action for death benefits prior to her husband's death, the ALJ concluded that she was not a "person entitled to compensation" obligated to seek the employer's approval of any settlements signed at that time.

Ingalls appealed to the Benefits Review Board. *Yates* v. *Ingalls Shipbuilding, Inc.*, 28 BRBS 137 (1994). The Director, OWCP, appeared as a respondent in support of Mrs. Yates. The Board affirmed, largely in reliance upon our decision in *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469 (1992), in which we held that an injured worker was a "person entitled to compensation" for the purpose of disability benefits under § 8 of the Act at "the moment his right to recovery vested," *id.*, at 477, which in that case was when the worker suffered his permanent injury. The Board reasoned that *Cowart*'s "vesting" rationale applied to death as well as disability benefits, and observed that Mrs. Yates' "right to death benefits under the Act could not have vested *before* she became a widow." App. to Pet. for Cert. A–35 (emphasis in original). Although it might appear at the time of settlement that Mrs. Yates would likely become a "person entitled to compensation" under the Act, before her husband's death any one of several events might occur that would prevent her from recovering any death benefits under the Act—she might predecease her husband, she might divorce her husband, or her husband might die from causes independent of his work-related injury. For these reasons, the Board held that Mrs. Yates was not a "person entitled to compensation" at the time she entered into the predeath settlements, but acknowledged that its ruling was at odds

with the decision of the Court of Appeals for the Ninth Circuit in *Cretan* v. *Bethlehem Steel Corp.*, 1 F. 3d 843 (1993), cert. denied, 512 U. S. 1219 (1994).

Ingalls again appealed, this time to the Court of Appeals for the Fifth Circuit. 65 F. 3d 460 (1995). Although Ingalls renewed its § 33(g) argument, the Court of Appeals rejected it for the reasons advanced by the Board. Ingalls also moved to strike the brief of the Director and to disallow the Director's further participation in the appeal on the ground that the Director lacked standing. The Court of Appeals dismissed this argument in a footnote, citing its prior decision in *Ingalls Shipbuilding Div., Litton Systems, Inc.* v. *White*, 681 F. 2d 275, 280–284 (CA5 1982), overruled on other grounds, *Newpark Shipbuilding & Repair, Inc.* v. *Roundtree*, 723 F. 2d 399, 406–407 (CA5) (en banc), cert. denied, 469 U. S. 818 (1984), in which the court held that "the Director has standing to participate as a respondent in the appeal of a [Benefits Review Board] decision [before the Court of Appeals]." 65 F. 3d, at 463, n. 2. The court distinguished our decision in *Director, Office of Workers' Compensation Programs* v. *Newport News Shipbuilding & Dry Dock Co.*, 514 U. S. 122 (1995), as relevant only to the question of the Director's standing as a petitioner to the Court of Appeals, and not as a respondent.

The Courts of Appeals are in disagreement over both questions addressed. The Courts of Appeals for the Fifth and Ninth Circuits are divided on the meaning of the phrase "person entitled to compensation." Compare 65 F. 3d, at 464 (potential widow is not a "person entitled to compensation"), with *Cretan, supra,* at 847 (potential widow is a "person entitled to compensation"). The Courts of Appeals for the Fourth, Fifth, and Ninth Circuits, and for the District of Columbia, are split over whether the Director may participate in proceedings before the Courts of Appeals as a respondent. Compare *Parker* v. *Director, OWCP*, 75 F. 3d 929, 935 (CA4 1996) (Director may not appear), cert. denied, *post,* p. 812,

with *Shahady* v. *Atlas Tile & Marble Co.*, 673 F. 2d 479, 483–484 (CADC 1982) (Director is a proper respondent as a person "adversely affected or aggrieved" by the decision below); *Goldsmith* v. *Director, OWCP*, 838 F. 2d 1079, 1080 (CA9 1988) (same); *White, supra*, at 281–282 (Director may appear pursuant to Federal Rule of Appellate Procedure 15(a)).

We granted certiorari to resolve these splits, 517 U. S. 1186 (1996).

## II

We begin our inquiry into the meaning of the phrase "person entitled to compensation" in § 33(g), as we must, with an examination of the language of the statute. *Moskal* v. *United States*, 498 U. S. 103, 108 (1990) ("In determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning") (citations and internal quotation marks omitted). Section 33(g)(1) states in pertinent part:

> "If the person entitled to compensation . . . *enters* into a settlement with a third person . . . for an amount less than the compensation to which the person . . . would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation . . . ." 33 U. S. C. § 933(g)(1) (emphasis added).

The plain language of this subsection reveals two salient points. First, the use of the present tense (*i. e.*, "enters") indicates that the "person entitled to compensation" must be so entitled at the time of settlement. Second, the ordinary meaning of the word "entitle" indicates that the "person entitled to compensation" must at the very least be qualified to receive compensation. Black's Law Dictionary 532 (6th ed.

1990) (defining "entitle" as "To qualify for; to furnish with proper grounds for seeking or claiming").

We reached the same conclusion in *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469 (1992). There, Cowart, an injured worker, settled with a third party without obtaining the consent of his employer or his employer's insurance carrier. Cowart thereafter filed a claim for disability benefits under the Act, which his employer contested. The employer argued that Cowart had been a "person entitled to compensation" under the Act at the time of his settlement, and that his failure to obtain his employer's approval of the settlement barred any further recovery of benefits under the Act. In response, Cowart asserted that he had not been a "person entitled to compensation" when he entered into the settlement because that phrase referred only "to injured workers who are either already receiving compensation payments from their employer, or in whose favor an award of compensation has been entered." *Id.*, at 475.

The Court held that Cowart was barred by § 33(g) from receiving further compensation under the Act. We recognized that the relevant time for examining whether a person is "entitled to compensation" is the time of settlement. *Ibid.* ("The question is whether Cowart, at the time of . . . settlement, was a 'person entitled to compensation' under the terms of § 33(g)(1) of the LHWCA"). We then addressed the definition of the term "person entitled to compensation." We said:

> "Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right." *Id.*, at 477.

We concluded that Cowart had satisfied the prerequisites for obtaining the permanent disability benefits at issue in that

case when he was injured, so that he was a "person entitled to compensation" and required to obtain his employer's approval at the time he entered into the settlement agreement. *Ibid.*

With *Cowart* and the plain language of § 33(g) in mind, the relevant inquiry in this case is whether Mrs. Yates satisfied the prerequisites for obtaining death benefits under the Act at the time she signed the releases contained in the predeath settlements. Section 9 of the Act, 33 U. S. C. § 909(b), governs the distribution of death benefits, and provides that a "widow or widower" is entitled to such benefits "[i]f the [employee's] injury causes death." See also § 902(11) (defining "death" as a basis for a right to compensation as "death resulting from an injury"); § 902(2) (defining "injury" as "accidental injury or death arising out of and in the course of employment"). The Act defines a "widow or widower" as "the decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time." § 902(16).

Taken together, these statutes indicate that a surviving spouse qualifies for death benefits only if: (i) the survivor's deceased worker-spouse dies from a work-related injury; (ii) the survivor is married to the worker-spouse at the time of the worker-spouse's death; and (iii) the survivor is either living with the worker-spouse, dependent upon the worker-spouse, or living apart from the worker-spouse because of desertion or other justifiable cause at the time of the worker-spouse's death. Cf. *Thompson* v. *Lawson,* 347 U. S. 334, 336 (1954) (looking to status of spouse at time of death to determine whether spouse is a "widow" or "widower" for purposes of LHWCA). It is impossible to ascertain whether these prerequisites have been met at any time prior to the death of the injured worker. Accord, *Cortner* v. *Chevron Int'l Oil Co.,* 22 BRBS 218, 220 (1989) ("It is not until death occurs that the right to benefits arises and the potential ben-

eficiaries are identified"); 51 Fed. Reg. 4270, 4276 (1986) ("Since a claim for survivor benefits does not arise until the employee's death, there is no claim [against the employer] that can be settled [before then]"). We therefore reject the argument that a person seeking death benefits under the Act can satisfy the prerequisites for those benefits at any earlier time—*e. g.,* when the worker is initially injured or when the worker enters into a predeath settlement. See also 20 CFR § 702.241(g) (1996) (no one can enter a settlement agreement with the employer regarding death benefits before the worker dies). Because Mrs. Yates' husband was alive at the time she released her potential wrongful death actions, she was not a "person entitled to compensation" at that time and was therefore not obligated to seek Ingalls' approval to preserve her entitlement to statutory death benefits.

Ingalls contends that the plain language of § 33(g)(1) mandates a contrary conclusion. Ingalls' analysis focuses on the presence of the phrase "would be entitled":

> "If the person entitled to compensation . . . enters into a settlement with a third person . . . for an amount less than the compensation to which the person . . . *would be entitled* under this [Act], the employer shall be liable [only if approval is obtained]." 33 U. S. C. § 933(g)(1) (emphasis added).

Because this subsection examines the compensation to which the person "would be entitled" under the Act, argues Ingalls, it "encompasses a broad forward looking concept" that effectively brings any "person who would be entitled to compensation" within its purview. Brief for Petitioners 15. As support, Ingalls draws upon the decision of the Ninth Circuit Court of Appeals in *Cretan* v. *Bethlehem Steel Corp.,* 1 F. 3d 843 (1993). On facts almost identical to those presented here, the Court of Appeals held that the injured worker's spouse was a "person entitled to compensation" for death benefits prior to her husband's death. The court found "lit-

tle sense in a distinction that turns on whether the death for which settlement is made has yet to occur." *Id.*, at 847.

Ingalls essentially takes issue with our conclusion that the proper time to evaluate whether a person is "entitled to compensation" is the time of settlement. Ingalls' position is at odds with our precedent, see *Cowart*, 505 U. S., at 475, and with the plain language of this statute, *supra*, at 255. The phrase "would be entitled" in subsection (g)(1) simply frames the inquiry into whether the approval requirement applies at all. If the person entitled to compensation enters into a settlement for an amount less than that to which the person "would be entitled" under the Act, then the employer's approval must be obtained. If the settlement is for an amount greater than or equal to the amount to which the person "would be entitled," then the employer's approval need not be obtained. 505 U. S., at 482. Ingalls' reading would assign an additional and unnecessary purpose to the phrase. Under Ingalls' suggested reading, a worker's spouse who signs a predeath settlement is considered a "person entitled to compensation" even though, in the time between the settlement and the worker's death, the worker's spouse might become ineligible for those death benefits (*e. g.*, by predeceasing or divorcing the worker). In this context, the worker's spouse would not actually be entitled to death benefits, but would nonetheless be considered the "person entitled" to such benefits. This reading cannot be supported by the statutory language.

Ingalls also contends that we should depart from a plain reading of the statutory language because strict adherence to it is at odds with the policies underlying the Act. More specifically, Ingalls avers that our reading of § 33(g) will effectively abrogate the employer's right to offset its liability for death benefits by any amounts received by the surviving spouse in predeath settlements. Section 33(f) allows an employer to reduce its compensation obligations under the Act by the net amount of damages that the "person entitled

to compensation" recovers from third parties. 33 U. S. C. § 933(f) ("If the person entitled to compensation institutes proceedings . . . the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person"). If, as Ingalls asserts, the phrase "person entitled to compensation" means the same thing under § 33(f) as it does under § 33(g), see *Cowart, supra,* at 479, then our holding today means that an employer would not be permitted to reduce the spouse's death benefits by any amounts the spouse receives from predeath settlements. Such a spouse would be able to recover once from the third party and again from the worker's employer under the Act after the worker's death. In effect, a spouse in this situation—unlike a spouse who entered into settlements the day after the worker dies—would receive double recovery for her injuries. This double recovery, Ingalls contends, contravenes one of the central tenets of the Act set forth in § 3(e), 33 U. S. C. § 903(e), of the Act: "[A]ny amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or section 688 of title 46, Appendix (relating to recovery for injury to or death of seamen), shall be credited against any liability imposed by this chapter." See also *Cowart, supra,* at 483 (noting that the Act "ensures against fraudulent double recovery by the employee"); 2A A. Larson, Workers' Compensation Law § 71.21 (1996) ("[T]he policy of avoiding double recovery is a strong one . . ."). In Ingalls' view, our reading of the statute gives a "potential widow . . . greater benefits and protections than that afforded to covered employees who settle their third party claims." Brief for Petitioners 22–23.

This entire argument, however, presupposes that the definition we today give to "person entitled to compensation" under § 33(g) applies without qualification to § 33(f) as well.

This is a question we have yet to decide, and is one we leave for another day. If, for the sake of argument, we assumed that Ingalls' proposition were correct, our conclusion on the question presented in this case would not change. We agree that the Act generally reflects a policy of avoiding double recovery. See 33 U. S. C. § 903(e). But § 903(e) is of fairly recent vintage, Pub. L. 98–426, 98 Stat. 1640; *E. P. Paup Co.* v. *Director, OWCP,* 999 F. 2d 1341, 1350 (CA9 1993) ("Prior to [enactment of] section 903(e), the credit doctrine allowed offset of benefits against LHWCA awards *only if* prior benefits were awarded under the LHWCA") (emphasis added), and its reach is not all inclusive. See, *e. g., Todd Shipyards Corp.* v. *Director, OWCP,* 848 F. 2d 125 (CA9 1998) (allowing double recovery of veterans disability benefits and LHWCA benefits); *Brown* v. *Forest Oil Corp.,* 29 F. 3d 966, 971 (CA5 1994) ("Although admittedly the LHWCA has a general policy to avoid double recoveries, we have also noted that limitations on employee recovery are not favored absent statutory authority") (footnote omitted). Because the prohibition against double recovery is not absolute, we do not find the possibility of such recovery in this context to be so absurd or glaringly unjust as to warrant a departure from the plain language of the statute. See *United States* v. *Rodgers,* 466 U. S. 475, 484 (1984) (plain language controls unless it leads to results that are " 'absurd or glaringly unjust' "). Furthermore, as Ingalls acknowledges, see Reply Brief for Petitioners 13, subrogation under the Act is not an employer's exclusive remedy against third parties responsible for employees' injuries; an employer in Ingalls' position would remain free to seek indemnification against a third party through a tort action in state or federal court. *Pallas Shipping Agency, Ltd.* v. *Duris,* 461 U. S. 529, 538 (1983); *Federal Marine Terminals, Inc.* v. *Burnside Shipping Co.,* 394 U. S. 404, 412–414 (1969). Accordingly, we hold that before an injured worker's death, the worker's spouse is not a "person entitled to compensation" for death benefits within the meaning of

LHWCA §33(g), and does not forfeit the right to collect death benefits under the Act for failure to obtain the worker's employer's approval of settlements entered into before the worker's death.

### III

Ingalls also challenges the "standing" of the Director, OWCP, to appear before the courts of appeals as a respondent in cases in which there are already two adverse litigants. To assess this claim, familiarity with the Act's appeals process, as well as with the Director's role within that process, is helpful.

A person seeking compensation under the Act must file a timely claim with the local deputy commissioner. 33 U. S. C. § 913(a) (1-year limitation period). The commissioner notifies the employer of the claim, § 919(b), at which time the employer might: (i) agree to pay the amount of benefits fixed by the Act, 20 CFR § 702.231 *et seq.* (1996) (procedures for payment of noncontroverted claims); (ii) enter into a formal settlement with the person seeking compensation for a (presumably) lesser amount, subject to the approval of the deputy commissioner or an ALJ, 33 U. S. C. § 908(i); 20 CFR § 702.241 *et seq.* (1996); or (iii) give notice that it is denying liability for, or controverting, the claim, § 702.251. If the employer controverts the claim, the deputy commissioner is empowered to attempt to resolve the parties' dispute informally. § 702.311 *et seq.* Should informal discussions prove unsuccessful, the commissioner refers the matter to an ALJ and a formal hearing is held. 33 U. S. C. §§ 919(c)–(d); 20 CFR § 702.316 (1996). "[A]ny party in interest" may appeal the ALJ's decision to the Benefits Review Board. 33 U. S. C. § 921(b)(3). An appeal from the Board's decision to the courts of appeals may be initiated by "[a]ny person adversely affected or aggrieved by a final order of the Board." § 921(c); see also 20 CFR § 802.410(a) (1996).

The Director, OWCP, plays a significant role in this process. In addition to being charged with the LHWCA's ad-

ministration, § 701.202 (transferring to the Director "all functions of the Department of Labor with respect to the administration of benefits programs under the [LHWCA]"), and enforcement, § 802.410(b) (noting that Director is "responsible for the administration and enforcement of the [LHWCA]"); see also *Newport News,* 514 U. S., at 134 (noting Director's "duty of uniform *administration* and *enforcement*"), the Director has also been authorized by the Secretary of Labor to appear as a litigant before the relevant adjudicative branches of the Department of Labor, the ALJ, and the Benefits Review Board. 20 CFR § 702.333(b) (1996) ("The Solicitor of Labor or his designee may appear and participate in any formal hearing [before an ALJ] held pursuant to these regulations on behalf of the Director as an interested party"); § 802.202(a) ("Any party . . . may appear before and/or submit written argument to the [Benefits Review] Board"); § 801.2(a)(10) (defining "party" to include "the Secretary or his designee"); § 802.201(a) ("The Director, OWCP, . . . shall [under certain circumstances] be considered a party adversely affected" for purposes of initiating appeal to Board).

The Director may also appear before the courts of appeals, although the limits of the Director's authority to do so are less clear. Section 21(c) of the Act, 33 U. S. C. § 921(c), provides in relevant part that

> "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred . . . ."

In *Newport News,* we held that "the phrase 'person adversely affected or aggrieved' does not refer to an agency acting in its governmental capacity," 514 U. S., at 130, so that the Director was therefore not permitted to appeal from a decision of the Benefits Review Board when the Board's decision did no more than "impai[r] [the Director's] ability to

achieve the Act's purposes and to perform the administrative duties the Act prescribes," *id.*, at 126. We expressed no view on the question whether the Director can appear before the court of appeals, not as a petitioner seeking review, but as a respondent. *Id.*, at 127, n. 2.

Any impediment to the Director's appearance as a respondent in this case is not of constitutional origin. As we stated in *Newport News*, although the Director had no statutory authorization to petition the Court of Appeals, "Congress *could* have conferred standing upon the Director without infringing Article III of the Constitution." *Id.*, at 133. In light of this observation, Article III surely poses no bar to the Director's participation as a respondent in those courts. Cf. *Diamond* v. *Charles*, 476 U. S. 54, 68–69 (1986) (reserving question whether persons seeking to intervene "must satisfy not only the requirements of [Federal Rule of Civil Procedure] 24(a)(2), but also the requirements of Art. III").

Whether the Director has statutory authority to appear as a respondent before the courts of appeals is not as easily resolved. The Act itself does not speak to the issue. Section 21(c) of the Act, by its very terms, defines only who "may obtain a review of [a final order of the Board]," 33 U. S. C. § 921(c); it does not purport to delineate who may appear in those proceedings once a proper party initiates them. Thus, we must reject Ingalls' argument that § 21(c) requires the Director to demonstrate an "advers[e] [e]ffect or aggriev[ement]" in order to appear as a respondent.

Section 21a of the Act, 33 U. S. C. § 921a, similarly provides no authorization. While § 21a states that "[a]ttorneys appointed by the Secretary shall represent the Secretary, the deputy commissioner, or the Board in any court proceedings under section 921 of this title or other provisions of this chapter," it says nothing about when the Secretary may be a party to those proceedings in the first place. See also 20 CFR § 802.410(b) (1996) ("The Director, OWCP, . . . shall be

deemed to be the proper party on behalf of the Secretary of Labor in all review proceedings conducted pursuant to section 21(c) of the LHWCA"). Nor need we infer the Director's right to appear as a respondent in order for § 21a to have meaning. Although *Newport News* curtailed the Secretary's right to appear as a petitioner before the courts of appeals in most circumstances, that decision did not foreclose an appearance as a petitioner in all situations. See, *e. g.*, *Newport News, supra*, at 128, n. 3 (leaving open the possibility that the Director may be a "person adversely affected or aggrieved" when appealing a Board ruling adverse to the § 944 fund).

Left with no guidance from the Act itself, we turn to the general rule that governs all appeals from administrative agencies to the courts of appeals, Federal Rule of Appellate Procedure 15(a). That Rule, in pertinent part, states:

> "Review of an order of an administrative agency, board, commission, or officer (hereinafter, the term 'agency' will include agency, board, commission, or officer) must be obtained by filing with the clerk of a court of appeals . . . [the appropriate form indicated by law]. . . . *In each case the agency must be named respondent.*" (Emphasis added.)

We believe that it is this Rule that confers upon the Director the right to appear as a respondent before the courts of appeals. Rule 15(a) clearly applies to appeals from the Benefits Review Board: The LHWCA authorizes appellate review of the "final order of the [Benefits Review] Board," 33 U. S. C. § 921(c), and Rule 15(a) applies to "[r]eview of an order of an administrative agency [or] board." We decline to read Rule 15(a) more narrowly, as the Courts of Appeals for the Fourth Circuit and the District of Columbia have done. Those courts have held that Rule 15(a) applies only where "a single private party is contesting the action of an agency, which agency must appear and defend on the merits

to insure the proper adversarial clash requisite to a 'case or controversy.'" *McCord* v. *Benefits Review Board,* 514 F. 2d 198, 200 (CADC 1975). Where "there is sufficient adversity between [the employer and the claimant] to insure proper litigation," *ibid.,* they reason, "the Director's presence as a party is not necessary" and would in fact run afoul of Federal Rule of Appellate Procedure 1(b) by "'extend[ing] . . . the jurisdiction of the courts of appeals.'" *Parker,* 75 F. 3d, at 934 (citing *McCord, supra,* at 200); see also Fed. Rule App. Proc. 1(b) ("These rules shall not be construed to extend or limit the jurisdiction of the courts of appeals as established by law").

We reject this interpretation, which would effectively require us to tack the words "when necessary to preserve adversity" onto the otherwise unqualified language in Rule 15(a) that "the agency must be named respondent." Where there is already a case or controversy between parties properly before a court, as there is in this case between Ingalls and Mrs. Yates who properly appear pursuant to 33 U. S. C. § 921(c), that court's jurisdiction is not extended by the inclusion of an additional party whose presence is also consistent with Article III, see *supra,* at 264. See *Pittston Stevedoring Corp.* v. *Dellaventura,* 544 F. 2d 35, 43, n. 5 (CA2 1976) ("The existence of sufficient adversity between private parties has not been thought to preclude the Government's right to be a party in many other sorts of review of federal administrative action"), aff'd on other grounds *sub nom. Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249 (1977). JUSTICE SCALIA is concerned that Rule 1(b) might be violated in the converse situation—*i. e.,* when the Director is the sole respondent whose presence is "necessary to preserve adversity." See *post,* at 274. Although the Director's participation in that case would not extend the courts' jurisdiction beyond the perimeter of Article III, see *Newport News,* 514 U. S., at 133 (no Article III impediment to the Director's participation), it is possible that such participation might exceed

the court's *statutory* authority to hear the case. While this transgression of statutory authority is not a question we decide today, it nevertheless raises a concern relevant to our interpretation of Rule 15(a). We do not find this concern controlling, however, when, as in this case, the Director is not in fact the sole respondent.

Having concluded that Rule 15(a) applies, the question becomes which "agency" must be named as a respondent. When an agency has a unitary structure—*i. e.*, where a single entity wears the hats of adjudicator and litigator/enforcer—the application of Rule 15(a) is straightforward. The Federal Communications Commission (FCC), for instance, has adjudicative duties, 47 U. S. C. §§ 154(j), 155(c), as well as enforcement duties that require it to appear as a litigant, § 402. It is therefore proper to name the FCC as the respondent "agency" in proceedings before the courts of appeals under Rule 15(a). Indeed, it is necessary to do so, since the FCC is the only "agency" that could be named. See also 29 U. S. C. § 160(f) (National Labor Relations Board adjudicates unfair labor practice claims and litigates before the courts of appeals); 16 U. S. C. §§ 825f, 825g (Federal Energy Regulatory Commission investigates, enforces, and adjudicates violations of the Federal Power Act).

But not all agencies share this unitary structure. Some have a split-function regime in which Congress places adjudicatory authority outside the agency charged with administering and enforcing the statute. The Occupational Safety and Health Act of 1970, for example, gives general enforcement authority to the Department of Labor, but vests adjudicatory authority in an independent body, the Occupational Safety and Health Review Commission. See 29 U. S. C. §§ 651(b)(3), 661; *Martin* v. *Occupational Safety and Health Review Comm'n,* 499 U. S. 144, 147 (1991). See also 30 U. S. C. §§ 811, 823 (authorizing Secretary of Labor to promulgate health and safety standards under the Federal Mine Safety and Health Act of 1977, but establishing independent

Federal Mine Safety and Health Review Commission to exercise adjudicatory authority under the Act). Other split-function regimes involve only one agency, whose adjudicative and enforcement/litigation duties have been divided by Congress between two sub-"agencies," both of which are under the umbrella of the same overarching agency.

In this latter type of split-function regime, the only type that we address today, it is the overarching agency that is the "agency" for the purposes of Rule 15(a), since an order of the agency's designated adjudicator is in reality an order of the agency itself. That "agency" may then be free to designate its enforcer/litigator as its voice before the courts of appeals. To require the agency's adjudicator to appear before the courts of appeals makes little sense because that adjudicator has no more interest or stake in defending its orders in the courts of appeals than does a district court. It would also compel what we believe is a strange result—the substitution of an agency's adjudicator for its designated litigator once the case reaches the courts of appeals.

Although our interpretation of Rule 15(a), as the dissent points out, is not free from anomalies, neither is the dissent's interpretation. In particular, we take issue with the dissent's view that the overarching agency must have absolute veto power over the decisions of its adjudicator before the adjudicator is deemed to be "within" the agency and before the order of one can be considered the order of the other. Cf. 8 CFR § 3.1(h) (1996) (Attorney General may review and modify decisions of the Board of Immigration Appeals, the Immigration and Naturalization Service's adjudicator). Other methods of agency oversight exist, and an agency's inability to employ the most compelling form of oversight does not mean it possesses *no* supervisory authority over its tribunal or that it is therefore somehow unfair to treat the adjudicator's order as the agency's. The Secretary of Labor's power under the LHWCA to appoint all five members of the Benefits Review Board, 33 U.S.C. § 921(b)(1), and

to establish the rules of procedure of the Board, 20 CFR § 802.101 *et seq.* (1996), demonstrates the Secretary's indirect but substantial control over the Board and its decisions. Perhaps these concerns animated the Courts of Appeals actually confronted with this situation, since they have seen fit, in over 2,000 decisions, to allow the Director's participation as a respondent. WESTLAW, CTA database (Jan. 21, 1997). Should Congress wish to alter this review scheme, it is, of course, free to do so.

As it stands now, however, we conclude that the Director may be named as a respondent in the courts of appeals. By statute and by regulation, the adjudicative and enforcement/litigation functions of the Department of Labor with respect to the LHWCA are divided between the ALJ's and the Benefits Review Board on the one hand, 20 CFR § 702.332 (1996) (formal hearings conducted by ALJ's); 33 U. S. C. § 921(b) (appeals from ALJ's heard by Benefits Review Board), and the Director on the other, see *supra*, at 262–263. Because the Benefits Review Board is a subdivision of the Department of Labor, see H. R. Rep. No. 92–1441, p. 12 (1972) (describing Board as "provid[ing] an internal administrative review of initial decisions in contested cases by a three-man board *within the Department of Labor*") (emphasis added); 20 CFR § 801 *et seq.* (1996) (describing "establishment and the organizational structure of the Benefits Review Board *of the Department of Labor*") (emphasis added), the Board's order is the Department's order, and the Department of Labor is the "agency" for the purposes of Rule 15(a). Congress, however, has delegated to the Secretary of Labor, the Department's chief administrator, the right to choose the Department's legal representative, 33 U. S. C. § 921a, and the Secretary has exercised that discretion by naming the Director as the Department's designated litigant in the courts of appeals. 20 CFR § 802.410(b) (1996).

This conclusion does not upset the balance of representation in the courts of appeals. Although in *Newport News*

we held that the Director does not always have the right to appeal as a petitioner to the courts of appeals, 514 U. S., at 135–136, and we now hold that the Director may appear as a respondent before those courts, this will not result in a "lopsided" scheme whereby the Director can appear only in defense of the Benefits Review Board's decisions. The Director, even as a respondent, is free to argue on behalf of the petitioner, see *Director, Office of Workers' Compensation Programs* v. *Perini North River Associates*, 459 U. S. 297, 301 (1983) (Director appeared as respondent before the Court of Appeals for the Second Circuit but filed a brief on behalf of the petitioner), and to challenge the decision of the Board. Indeed, the Director's participation before the courts of appeals would be plenary but for the inability to initiate an appeal; the Director must usually wait for someone else to do so first. Although this is unusual, it does not result in a "lopsided" proceeding and is an oddity wrought by congressional "oversight," *Newport News*, 514 U. S., at 128–129 (GINSBURG, J., concurring), and not by virtue of our holding today.

For these reasons, the judgment of the United States Court of Appeals for the Fifth Circuit is affirmed.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and dissenting in part.

Today's opinion concludes, on the basis of Federal Rule of Appellate Procedure 15(a), that the Director of the Office of Workers' Compensation Programs, a subagency within the Department of Labor, is a proper respondent in the courts of appeals when review is sought of an order of the Benefits Review Board (Board or BRB), an independent adjudicatory body within that Department. This conclusion is at odds with the plain language of the Rule, and produces a bizarre arrangement that will have troublesome consequences for

both agencies and private parties. I respectfully dissent from the Court's judgment on this issue.

Federal Rule of Appellate Procedure 15(a) provides:

> "Review of an order of an administrative agency, board, commission, or officer (hereinafter, the term 'agency' will include agency, board, commission, or officer) must be obtained by filing [a petition for review]. . . . In each case the agency must be named respondent."

It is clear (and the Court does not say otherwise) that despite the Rule's shorthand use of "agency" in the second sentence, the entity that must be named respondent is the one whose order is under review, whether it is an agency, board, commission, or officer. Thus, in determining whether the Rule authorizes the Director, as representative of the Department of Labor, to appear as a respondent in the courts of appeals, the central question is whether the order under review is that of the Department. The answer to that question is obviously and unavoidably no.

To begin with, the very statute that provides for the judicial review at issue indicates that the order under review is that of the BRB:

> "Any person adversely affected or aggrieved by *a final order of the Board* may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred . . . . Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the *order of the Board* . . . ." 44 Stat. 1436–1437, as amended, 33 U. S. C. § 921(c) (emphasis added).

The governing statute elsewhere specifies that the Board is the statutorily created entity responsible for "hear[ing] and determin[ing] appeals . . . taken by any party in interest from decisions with respect to claims of employees under" the Longshore and Harbor Workers' Compensation Act

(LHWCA). § 921(b)(3). The Board's disposition of those appeals is not subject to review by the Secretary of Labor in his capacity as head of the Department, but must be appealed to the courts pursuant to the review provision quoted above.

Despite the clarity of the statute, the Court concludes that it is "in reality" an order of the Department that is under review in the courts of appeals. *Ante,* at 267–270. It offers two arguments in support of this proposition. First, it says—relying upon a regulation promulgated by the Secretary, 20 CFR § 801.1 (1996), and upon a statement in the House Report on the LHWCA Amendments of 1972, 86 Stat. 1251—that the Board is "a subdivision of the Department of Labor." *Ante,* at 269. But of course neither a Secretary's regulation nor a House Committee's report has the power to transform a statutory entity into something it is not. While the Board may be a "subdivision" of the Department of Labor—and thereby subject to the Secretary's authority— for certain purposes, see, *e. g.,* 33 U. S. C. § 921(b)(1) (Secretary appoints Board members); § 939(a) ("Except as otherwise specifically provided, the Secretary shall administer the provisions of" the LHWCA); 20 CFR § 802.101 *et seq.* (1996) (regulations of Secretary establishing rules of procedure for Board), the Court expressly acknowledges that the Board is *not* a subdivision in the sense that the Secretary, as head of the Department, can direct or override its decisions. *Ante,* at 268. But *that* sense is the one relevant to the question whether an order of the Board is "in reality" an order of the Department, *ibid.* Insofar as vindication of the order is concerned, there is no "necessary identity of interest" between the Board and the Department or the Director as its chosen delegate. *Shahady* v. *Atlas Tile & Marble Co.,* 673 F. 2d 479, 485 (CADC 1982) (emphasis deleted). Indeed, the Department through its delegate may well be hoping to see the Board's order *overturned* in the court of appeals. See, *e. g., Parker* v. *Director, Office of Workers' Compensation*

*Programs,* 75 F. 3d 929, 932–934, 935, n. 7 (CA4), cert. denied, *post,* p. 812; *Simpson* v. *Director, Office of Workers' Compensation Programs,* 681 F. 2d 81, 82 (CA1 1982), cert. denied *sub nom. Bath Iron Works Corp.* v. *Director, Office of Workers' Compensation Programs,* 459 U. S. 1127 (1983). The Court's attribution of the Board's order to the Department contradicts our recognition, only two Terms ago, that it is "quite simply contrary to the whole structure" of the LHWCA to view the Board's adjudicatory functions as the province of (implicitly) the Department as overarching agency and (explicitly) the Director as its delegate. *Director, Office of Workers' Compensation Programs* v. *Newport News Shipbuilding & Dry Dock Co.,* 514 U. S. 122, 134 (1995).

The second argument offered in support of the view that the Director is a proper respondent when review is sought of an order of the Board is that (1) Rule 15(a) *requires* the naming of *someone* representing the agency, and (2) the Director is certainly a more sensible candidate than the Board. *Ante,* at 267, 268. The second part of this analysis, the *faute de mieux* point, is questionable: The Board could readily develop a staff to defend its judgments, and it is hard to imagine a *worse* defender than an entity that is free to disagree (and often does disagree) with the order under review. Cf. *Pittston Stevedoring Corp.* v. *Dellaventura,* 544 F. 2d 35, 42, n. 5 (CA2 1976) (Friendly, J.) (suggesting that Board rather than Director is proper respondent), aff'd on other grounds *sub nom. Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249 (1977). But the real flaw in the reasoning is the first step, which assumes that when Rule 15(a) states that the "agency, board, commission, or officer" whose order is under review "must be named respondent," it means to confer upon such entities (or, in the Court's view, their parent agencies) a party status and litigating power they would not otherwise possess—so that a purely adjudicatory body with no policymaking responsibility, which would otherwise not be a party, is suddenly free to step in (perhaps through its

parent) to "defend" its judgment. That is not only an unlikely function for the Federal Rules of Appellate Procedure to perform (and thus an unlikely reading of the language of Rule 15(a), which, contrary to the Court's suggestion, see *ante*, at 266, is far from unambiguous on this point); it is an impermissible function, since it may give appellate courts jurisdiction over a dispute (if it can be called a dispute) that would otherwise be beyond their ken, namely, one in which the victorious private party to the lower court adjudication has no interest in defending it, and only the adjudicator itself (or its parent) appears. That extension of litigation would violate Rule 1(b), which provides that the Federal Rules of Appellate Procedure "shall not be construed to extend or limit the jurisdiction of the courts of appeals as established by law." Fed. Rule App. Proc. 1(b). In the present context, for example, if the victorious employer against whom the employee takes an appeal chooses not to contest it, or ceases to exist while the appeal is pending, the agency's status as a party respondent would permit continued litigation of the appeal. The concern with extending the jurisdiction of the courts of appeals through participation of the Director is more than theoretical; he has in the past sought to continue litigation of claims (at least at the Board level) that the employee and employer preferred not to pursue. *E. g., Ingalls Shipbuilding Div., Litton Systems, Inc.* v. *White*, 681 F. 2d 275, 277 (CA5 1982), overruled on other grounds, *Newpark Shipbuilding & Repair, Inc.* v. *Roundtree*, 723 F. 2d 399, 407 (CA5 1984).

The Court's response to all of this is that concerns about extension of jurisdiction are "not . . . controlling" in this case, since both private parties are participating. *Ante*, at 267. But of course when we interpret a rule of general application, such as Rule 15(a), we are bound to take into account not only the ramifications of our interpretation for the case before us, but also the ramifications for future cases. In-

deed, a different approach would make the meaning we ascribe to the general rule turn on the specifics of the case that first raises the issue. For good reason, that is not our practice. Because interpreting Rule 15(a) to make the Director a party would sometimes extend the jurisdiction of the courts of appeals, and because Rule 1(b) requires that the Rule be construed to avoid that result, the Rule should not be given the meaning that today's opinion accords it.

Invoking Rule 15(a) (and, of course, ignoring the identity of the body that issued the order) is the only imaginable basis for concluding that the Director is *always* a proper respondent in the courts of appeals, regardless of the outcome below. There is, however, a respectable argument in support of his respondent status when he *participates* before the Board and *prevails*. That parties in whose favor the judgment under review runs are ordinarily proper respondents or appellees in the courts of appeals is so obvious that the Federal Rules of Appellate Procedure—which, contrary to the Court's belief, purport to prescribe which parties must be named, not who is a party—do not bother to provide for the naming of such individuals. (That is to say, there is no analogue to Rule 15(a) for them.)

But the Director—even assuming he is entitled to participate as a party before the Board, compare 20 CFR § 802.201(a)(1) (1996) (allowing participation) with *Newport News, supra,* at 125–126 ("[T]he [LHWCA] does not by its terms . . . grant [the Director] authority to prosecute appeals to the Board")—is *not* an ordinary prevailing party. An ordinary party in that position would, if he had *lost* below, have the right to prosecute an appeal. The Director, in contrast, has no such power. *Newport News, supra.* This inability to appeal reflects the limited character of the interests of the Director affected by the Board's judgment, which include neither his exposure to financial or other liability, nor nullification of one of his own orders, but only legal or policy dis-

agreement with the Board's decision.* It would be an odd and novel result if the Director, in cases of this nature, could be named as a respondent if he was on the prevailing side below, but could not initiate an appeal if he was on the losing side. I would not reach such a result unless the statute left no choice, which is not the case here.

Finally, I may observe that today's game has really not been worth the candle. The strange and countertextual arrangement that the Court has constructed might perhaps be excused if excluding the Director from party status would do some substantial harm to the scheme of the LHWCA. But it does not. His "significant role" in administering the Act, *ante,* at 262, does not mean that his participation in proceedings before the courts of appeals is essential. As we emphasized in *Newport News,* limits on the Director's ability to participate in the judicial-review process are of relatively minor consequence because his "power to resolve legal ambiguities in the statute" may always be exercised through his rulemaking authority. 514 U. S., at 134. In addition, the Director is guaranteed the right to file an *amicus* brief in the court of appeals, with or without the consent of the parties. Fed. Rule App. Proc. 29.

\* \* \*

I think it plain that the intent of Rule 15(a) is not to restructure the Executive Branch, or to convert Article I courts (or their parent agencies) into litigating arms, but rather simply to require that those agencies *entitled to party status*—i. e., those that would be entitled to intervene in the appeal under the criteria set forth in Rule 15(d)—must be

---

*In my view the Director *is* akin to an ordinary respondent or appellee when he prevails before the Board in his capacity as administrator of the LHWCA special fund established by 33 U. S. C. § 944. In *Newport News,* we left open the question whether the Director has standing to appeal an *adverse* ruling of the Board when he participates in that capacity. 514 U. S., at 125, n. 1.

named as respondents. By making the Rule much more than that, and then flatly misidentifying, through sheer will power, the agency whose "order" is at issue, the Court creates a zany system in which an Executive officer from whom the Board has carefully been made independent, and one who will often disagree with—and perhaps even have argued against—the Board's judgment, will be charged with "defending" that judgment in the court of appeals, where, once arrived, he is free instead to maintain an independent *attack* upon the judgment, even though, as we held in *Newport News*, he would not have been able to launch that attack by appealing on his own. Today's disposition regarding the Director's status is at odds with the relevant provisions of law and creates the potential for disruption of orderly litigation and settlement of disputes between employers and employees. I respectfully dissent from that portion of the judgment.