Newman, Circuit Judge, dissenting.
On this appeal, there is no appellee. The Petitioner, Analog Devices, Inc., prevailed in the PTO, where the Patent Trial and Appeal Board (PTAB) invalidated all of the challenged claims.[1] On appeal by Knowles Electronics LLC ("Knowles"), the petitioner declined to appear, filed no brief and offered no argument. Dkt. No. 2 (Letter from Analog Devices, Inc., May 4, 2016).
*1379 The PTO Director intervened in the appeal "as of right," filed a brief in support of the petitioner's position, and appeared at oral argument as "intervenor."
However, in the rare situation where there is no remaining appellee and the intervenor has asserted no injury to itself, the intervenor of right does not have independent standing to continue the litigation. And even when a party with standing remains on the side in which the intervenor joins, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." Town of Chester v. Laroe Estates, Inc. , --- U.S. ----, 137 S.Ct. 1645, 1651, 198 L.Ed.2d 64 (2017). The "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst. , 555 U.S. 488, 498, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). I raise this concern in this case, for this appeal was abandoned by the prevailing party, leaving no platform for the intervenor to continue the litigation. From my colleagues' contrary ruling, I respectfully dissent.
The Statutory Authorization to Intervene
The America Invents Act authorizes the PTO Director to intervene in appeals to the Federal Circuit from designated classes of inter partes proceedings:
The Director shall have the right to intervene in an appeal from a decision entered by the Patent Trial and Appeal Board in a derivation proceeding under section 135 or in an inter partes or post-grant review under chapter 31 or 32.
35 U.S.C. § 143 (2012).[2] An administrative agency's intervention in judicial proceedings enables exploration of matters of agency concern such as the agency's jurisdiction or procedures or regulations. The legislative record provides no hint that Congress and the interested public may have contemplated intervention beyond the protocols established in law and precedent.
If it were indeed intended that the Director would enter the appeal and litigate the merits of the appellee's case although the appellee has quit the contest, surely some mention of this irregular purpose would have appeared in the legislative record. See Whitman v. Am. Trucking Ass'ns, Inc. , 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions-it does not, one might say, hide elephants in mouseholes.").
Following argument of this appeal, we requested additional briefing on this aspect. Knowles' brief accepts the PTO Director's intervention, but objects to the Director's filing of thirty-four pages of additional evidence upon intervening. The Director states that he does not need Article III standing to intervene, and that in all events he has Article III standing. The panel majority bases the Director's Article III standing on the America Invents Act provision that authorizes the Director to intervene. Maj. Op. 1372 n.2. However, as I shall discuss, when no party remains on the side taken by the intervenor, and the intervenor asserts no injury of its own, an intervenor does not meet the requirements of Article III jurisdiction. The AIA, in authorizing intervention, did not and could not create Article III jurisdiction in circumstances where Article III jurisdiction is absent.
*1380 "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist. , 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 173-180, 2 L.Ed. 60 (1803) ). A defect in standing is a defect in subject matter jurisdiction, for "standing in its most basic aspect can be one of the controlling elements in the definition of a case or controversy under Article III." ASARCO Inc. v. Kadish , 490 U.S. 605, 613, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) ; see Hollingsworth v. Perry , 570 U.S. 693, 705, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013) (stating that "standing 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.' " (quoting Arizonans for Official English v. Arizona , 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ) ); United States v. Cotton , 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) ("[S]ubjectmatter jurisdiction ... can never be forfeited or waived.").
It seems clear that the statutory authorization to the PTO Director to intervene was not intended to change the rules of intervenor standing. In an article following enactment of the AIA, former Director Matal observed that this provision received scant legislative attention. See Joe Matal, A Guide to the Legislative History of the America Invents Act: Part II , 21 Fed. Cir. B.J. 539, 543 (2012) ("Section 7(c)(3) of the AIA amends § 143 of title 35 to allow the Director to intervene in a Federal Circuit appeal of the PTAB's decision in a derivation proceeding or in an inter partes or post-grant review. Senator Kyl noted this provision in passing during the March 2011 debates on the bill." (citing 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) ) ).
This silence in the legislative record suggests that the intervenor proposal was not viewed as controversial, or as changing the intervenor's role. I doubt that Congress and the public intended silently to cast aside Constitution-based precedent such as Diamond v. Charles , where the Supreme Court explained that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Article III." 476 U.S. 54, 68, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986).
The America Invents Act's grant to the PTO Director of the right of intervention is consistent with the general rule that litigation solely by an intervenor is not permitted unless the intervenor is itself injured by the conduct at issue. "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.' " Spokeo, Inc. v. Robins --- U.S. ----, 136 S.Ct. 1540, 1547-48, 194 L.Ed.2d 635 (2016) (alteration in original) (quoting Raines v. Byrd , 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ). The principle that a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" also "applies to intervenors of right." Town of Chester , 137 S.Ct. at 1650-51 (quoting Davis v. Fed. Election Comm'n , 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ).
In elaborating on whether an intervenor may continue the litigation when no party remains on that side of the case, the Court has explained:
The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements. This Court consistently *1381 has required, in addition, that the party seeking judicial resolution of a dispute "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the other party.
Diamond , 476 U.S. at 62, 106 S.Ct. 1697 (quoting Gladstone Realtors v. Vill. of Bellwood , 441 U.S. 91, 99, 99 (S.Ct. 1601, 60 L.Ed.2d 66 1979) ).
Precedent is clear, that when an intervenor is the only entity remaining on its side of the dispute, the intervenor must have an interest sufficient to satisfy Article III in order to continue the litigation. Where, as here, the PTO Director as intervenor is requesting this court to affirm the PTAB decision, although no party is requesting this action, an independent PTO interest or injury is required, such as a challenge to PTO jurisdiction or procedure.[3] As stated in Phigenix, Inc. v. Immunogen, Inc. , the " 'irreducible constitutional minimum of standing' consists of 'three elements' ": (1) injury-in-fact, (2) causation, and (3) redressability. 845 F.3d 1168, 1171 (Fed. Cir. 2017) (quoting Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). The PTO has not met this minimum, or attempted to do so. The PTO intervenor brief simply argues the unpatentability of the Knowles claims; the PTO asserts no injury or threatened injury to itself.
It is not disputed that Knowles, the losing party in the PTAB inter partes proceeding, has experienced injury and has standing to appeal. The Director states in its supplemental brief that this alone suffices for PTO intervenor standing to continue the appeal when there is no appellee. PTO Suppl. Br. 6 (stating that "Knowles [ ] has a concrete, personalized stake in the outcome" and as such, "[n]othing more is required under Article III"). It is correct that Knowles has a stake in the outcome, and the right to appeal. However, the PTO errs in stating that Knowles' stake provides Article III standing to the PTO as intervenor. In Diamond v. Charles the Court was explicit in stating "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Article III." 476 U.S. at 68, 106 S.Ct. 1697. Here no party to the PTO proceeding remains on the intervenor's side of the appeal. Precedent requires that unless the intervenor itself has a sufficient interest in the outcome, the intervenor does not have "standing to litigate"
*1382 and continue the action. Arizonans , 520 U.S. at 64, 117 S.Ct. 1055.
The Director states that "[t]he courts do not inquire into the standing of a party that is not seeking separate affirmative relief." PTO Suppl. Br 1. However, the Director is not a "party." "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.' " U.S. ex rel. Eisenstein v. City of N.Y. , 556 U.S. 928, 933-34, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009) (quoting Black's Law Dictionary 1154 (8th ed. 2004) ). Although "[a]n individual may also become a 'party' by intervening in the action," id. , party status does not flow from the act of intervening, but from the requirements of Article III standing. An entity may not "invoke the authority of a federal court" unless it has standing. DaimlerChrysler v. Cuno , 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). The statutory grant of intervention does not alone provide party status to the intervenor. See Town of Chester , 137 S.Ct. at 1650-51 ; Spokeo , 136 S.Ct. at 1547-48 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").
The question is not whether the PTO Director is authorized to intervene in appeals under the America Invents Act. The question is whether, with that authorization, the PTO intervenor can continue to litigate the appellee's position when the appellee has dropped out and the intervenor has no independent interest or injury. Precedent answers in a clear negative: when no party remains on that side of the case, the intervenor must have independent standing in order to "continue a suit in the[ir] absence." Diamond , 476 U.S. at 68, 106 S.Ct. 1697 ; see Lujan, 504 U.S. at 576-77, 112 S.Ct. 2130 ("[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right. Whether the courts were to act on their own, or at the invitation of Congress, in ignoring the concrete injury requirement described in our cases, they would be discarding a principle fundamental to the separate and distinct constitutional role of the Third Branch.").
The Director argues that "[t]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" and states that although an appellant must have Article III standing, "[o]ther parties, such as defendants, appellees, or intervenors who are not seeking affirmative relief, need not have constitutional standing for a case to proceed." PTO Suppl. Br. 4. That is not the situation before us. Here there is no party on the petitioner's side of the litigation, no appellee to defend the PTAB decision in its favor. Thus, constitutional standing is required of the intervenor. The Director's citation of Rumsfeld v. Forum for Academic and Institutional Rights, Inc. , 547 U.S. 47, 52 n.2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006) is inapt, for Rumsfeld does not deal with whether an intervenor without an interest can continue the case when there is no appellee. Rumsfeld addressed whether an association of law schools had constitutional standing to bring suit on behalf of its members; intervenor standing was not an issue.
The PTO also cites ASARCO Inc. v Kadish , 490 U.S. 605, 618, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) to support the position that standing for the Director as intervenor is not required. PTO Suppl. Br. 5. ASARCO too is inapt; that action was brought by "various individual taxpayers and the Arizona Education Association" who sought "a declaration that the state statute governing mineral leases on state lands is void, and also seeking appropriate injunctive relief." Id. at 610, 109 S.Ct. 2037 (internal citation omitted). The question *1383 was whether "the case should be dismissed for lack of standing, since neither respondent taxpayers nor respondent teachers association, who were the original plaintiffs, would have satisfied the requirements for bringing suit in federal court at the outset." Id. at 612, 109 S.Ct. 2037. There was no issue of intervenor standing, for the mineral lessees who intervened had, without dispute, sufficient interest and injury for constitutional standing. The question of standing in ASARCO related to federal/state jurisdiction, for the action originated in the Arizona state courts. Id. at 610, 618, 109 S.Ct. 2037. That case does not support intervenor standing in the absence of any appellee, and when there is no injury to the intervenor.
The PTO states that "even if the USPTO had to show Article III standing, for example if it were to seek relief from a decision of this court, it has Article III standing to participate in this case as the agency that made the decision...." PTO Suppl. Reply Br. 2-3. But the agency that adjudicated a dispute between private parties does not automatically have standing to continue to litigate the appeal as intervenor, after the appellee has quit the contest. For the agency to continue to litigate a terminated dispute, it must have standing as a disputant.
The PTO cites Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Department of Labor , 519 U.S. 248, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997), for the proposition that an agency may participate in an appeal from its own decision. PTO Suppl. Br. 8-9. However, Ingalls was not a question of intervention. In Ingalls the Director of the Office of Workers' Compensation Programs was the respondent in an appeal to the court by "[a]ny person adversely affected or aggrieved by a final order of the Board." Id. at 263, 117 S.Ct. 796 (quoting 33 U.S.C. § 921(c) ). In contrast, here the PTO Director is not the respondent.
The Director also argues that the public interest provides the PTO with "Article III standing to appear in this Court to advocate for the correct application of the federal patent laws." PTO Suppl. Br. 9-11. The Director quotes from In re Debs , 158 U.S. 564, 584, 15 S.Ct. 900, 39 L.Ed. 1092 (1895) : "As the Supreme Court has recognized, '[t]he obligations which [the United States] is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.' " PTO Suppl. Br. 9 (alteration in original). In re Debs was a petition to the Supreme Court for a writ of habeas corpus from contempt charges originating in violations of a district court's injunction that prohibited railroad union officers from, among other actions, "attempting to compel or induce" employees to "refuse or fail to perform any of their duties" with the railroads. Id. at 570-71, 15 S.Ct. 900. The Court upheld the injunction as a constitutional exercise of power by the federal government in preventing obstruction of interstate commerce. Id. at 599-600, 15 S.Ct. 900. There are no parallels to the case at hand.
Applying the established rules, unless the Director as intervenor has a concrete and particularized interest such as responding to a challenge to agency jurisdiction or regulations or procedures, the PTO does not have authority as intervenor to litigate when there is no appellee or respondent. If a purpose of the America Invents Act were to enlarge the government's authority to challenge patent validity, such a dramatic change cannot be inferred from legislative silence.
New Evidence Submitted by the PTO as Intervenor
Knowles challenges the PTO's position that as intervenor it can submit "significant *1384 new evidence discussing extra-record technology." Knowles Suppl. Br. 1; 5-10. The Director, on intervening, filed a Supplemental Appendix containing thirty-four pages of documents not previously in evidence, from various textbooks and reference works that had been cited by Knowles at the PTAB hearing.
Knowles cites Michigan v. EPA for the "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." --- U.S. ----, 135 S.Ct. 2699, 2710, 192 L.Ed.2d 674 (2015) (citing S.E.C. v. Chenery Corp. , 318 U.S. 80, 87, 63 S.Ct. 454, 87 (L.Ed. 626 1943) (" Chenery I ") ). For administrative proceedings, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts , 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). These thirty-four pages were not in the administrative record.
The PTO states that since these textbooks and reference works were referred to by Knowles, who placed some pages in evidence, the Director "should be able to respond to those assertions based on the entire books and not be forced to rely on that party's characterization of thousands of pages of text." Intervenor's Opp'n to Appellant's Mot. to Strike Portions of Suppl. App. 7. Knowles states that these books indeed contain thousands of pages, and that the filing of thirty-four newly selected pages by the Director intervening on appeal leaves Knowles with "no opportunity to introduce rebuttal factual and expert evidence and with this Court having to act as a court of first instance in the Board's stead." Knowles Suppl. Br. 1.
No reading of the America Invents Act signals a legislative intent to depart from the principle of administrative review set forth in Chenery I . See S.E.C. v. Chenery Corp. , 332 U.S. 194, 196, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947) (" Chenery II ") (stating the principle that review is based on the record before the agency is "a simple but fundamental rule of administrative law"). The Patent Act is explicit that the Federal Circuit must "review the decision from which an appeal is taken on the record before the Patent and Trademark Office." 35 U.S.C. § 144 ; see Fla. Power & Light Co. v. Lorion , 470 U.S. 729, 743-44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court.").
If new evidence is deemed important for consideration on appeal, the proper course is to request remand to the agency tribunal, to assure that there is an appropriate opportunity to respond.
CONCLUSION
I respectfully dissent from my colleagues' position. Intervention is designed to permit participation by entities with interests in the matter before the court. When the intervenor does not have an independent interest or injury, and no party remains as appellee on the side favored by the intervenor, the requirements of intervenor status are not met.

Analog Devices, Inc. v. Knowles Elecs. LLC , No. 2015-004989, 2015 WL 5144183 (P.T.A.B. Aug. 28, 2015) ; Analog Devices Inc. v. Knowles Elecs. LLC , No. 2015-004989, 2016 WL 675856 (P.T.A.B. Feb. 17, 2016).

Inter partes reexaminations requested before the effective date of the America Invents Act are grandfathered therein. Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 7(e)(4), 125 Stat. 284, 315 (2011). The instant action is in that category.

An example of appropriate intervention is seen in In re Cuozzo Speed Techs., LLC , 793 F.3d 1268 (Fed. Cir. 2015), where the PTO Director intervened although the appellee had withdrawn. The PTO defended the PTAB's decision on the merits, defended its regulation authorizing application of the "broadest reasonable interpretation" in post-grant proceedings, and also argued in support of the AIA provision barring judicial review of PTO institution decisions. On Cuozzo's petition, the Supreme Court granted certiorari to review these general aspects, and recaptioned the case to include the Director as respondent, viz ., Cuozzo Speed Techs., LLC v. Lee , --- U.S. ----, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016) (deciding the regulatory and statutory aspects).
The majority here notes that it is "follow[ing] the Supreme Court guidance in Cuozzo " on PTO intervention. Maj. Op. 1372, n.2. I note, however, that the Supreme Court did not address intervenor standing in Cuozzo ; the Court mentioned PTO intervention solely in the context of comparing inter partes review to district court litigation, in discussing the PTO's adoption of the "broadest reasonable interpretation." See Cuozzo , 136 S.Ct. at 2144. Nor did Personal Audio, LLC v. Electronic Frontier Foundation concern intervenor standing, for Electronic Frontier Foundation was a party in the PTAB and the appellee on appeal, not an intervenor. 867 F.3d 1246, 1249-50 (Fed. Cir. 2017).